**REVERSE and RENDER; and Opinion Filed February 3, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01417-CV

### DUANE K. ROSSMANN AND DUFEK MASSIF HOSPITAL CORPORATION, Appellants
### V.
### BISHOP COLORADO RETAIL PLAZA, L.P., Appellee

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-00282-E**

## OPINION

Before Justices Bridges and Fillmore[1]
Opinion by Justice Fillmore

Bishop Colorado Retail Plaza, L.P. (Bishop) agreed to lease two suites in a shopping center to LTHM–Dallas Operations, LLC (LTHM). In August 2010, LTHM signed written leases for the two suites, and WestMed III, LLC (WestMed) subsequently guaranteed payment under the leases. Both leases commenced on November 29, 2010 and were for a period of five years. After LTHM and WestMed defaulted on their agreements in December 2011, Bishop sued them, as well as a number of other parties including Duane K. Rossmann (Rossmann), a former officer and director of LTHM and WestMed, and Dufek Massif Hospital Corporation (Dufek), the entity that purchased certain of WestMed's and LTHM's assets after foreclosure by

---

[1] The Honorable Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, was a member of the original panel and participated in the submission of this case but, due to his retirement, did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.1(b).

their lender. At trial, LTHM, WestMed, Rossmann, and Dufek were the only remaining defendants. The trial court rendered judgment against all four defendants but, pursuant to section 171.255 of the tax code, limited Rossmann's liability to debts incurred by LTHM and WestMed after they forfeited their corporate privileges.

In this appeal, Rossmann argues the trial court erred by determining that any of Bishop's claimed damages were created or incurred after LTHM and WestMed forfeited their corporate privileges while Dufek contends Bishop's claims against it are barred by the statute of frauds. Because we agree with both Rossmann and Dufek, we reverse the trial court's judgment as to them and render judgment that Bishop take nothing from Rossmann or Dufek.

### Background

On October 30, 2009, WestMed borrowed $33,000,000 from the First National Bank of Edinburg, Texas (FNB) to purchase the South Hampton Community Hospital (the hospital). LTHM was responsible for operating the hospital. Over the next two years, WestMed, LTHM, and LTHM Dallas–Real Estate, L.L.C. (LTHM–RE), the entity that leased the property on which the hospital was situated, borrowed over $24,000,000 in additional funds from FNB to keep the hospital in business. In exchange, FNB received a security interest in certain assets owned by WestMed, LTHM, and LTHM–RE.

In August 2010, LTHM decided to expand the operations of the hospital to include off-campus diagnostics. In furtherance of this plan, in August 2010 LTHM signed commercial leases for two suites in a shopping center owned by Bishop (the Leases). Each lease had a term of five years and commenced on November 29, 2010. WestMed signed agreements guaranteeing LTHM's performance under the Leases.

The hospital remained unprofitable and, on May 9, 2011, WestMed, LTHM, and LTHM–RE agreed to assign the business and operations of the hospital to the J-M Reef Hospital

–2–

Corporation (J-M Reef), which would hold the property in trust until a certain loan was repaid to FNB or the trust was terminated pursuant to one of certain specified events.[2] Rossmann was named chief executive officer, chairman, and manager of J-M Reef and was given authority to act for LTHM and WestMed. Rossmann was also named an officer and director of both LTHM and WestMed.

LTHM failed to pay the rent due under the Leases on December 1, 2011. On December 6, 2011, FNB foreclosed on three tracts of land that secured a May 10, 2011 promissory note for a loan of $3,000,000 to WestMed, LTHM, and LTHM–RE. The Leases were not associated with the three tracts of land that were the subject of the foreclosure sale. FNB conveyed the three tracts of land to Dufek. Although the relevant documents are not in the reporter's record, FNB also evidently, in lieu of foreclosure, took possession, under chapter 9 of the business and commerce code, of certain assets of WestMed, and LTHM that secured a November 5, 2010 loan for $5,500,000 and transferred these assets to Dufek. As relevant to this appeal, the bill of sale, which was signed only by FNB, assigned to Dufek "[a]ll leases, including ground leases." Dufek pledged all the assets it received from FNB as collateral for a loan from FNB.

Rossmann was the sole shareholder, officer, and director of Dufek. According to Rossmann, he was responsible for running the hospital while FNB attempted to find a buyer. Rossmann informed Bishop on December 28, 2011 that neither LTHM nor WestMed had any assets that could be used to pay rent under the Leases.

Bishop sent a notice of default to WestMed and LTHM on January 3, 2012 and, on January 10, 2012, filed this suit. Bishop initially sued LTHM, LTHM–RE, WestMed, Dufek,

---

[2] Due to the ownership structure of WestMed and LTHM, other entities were parties to this agreement. However, because those entities are not relevant to our disposition of this case, we neither identify them in this opinion nor attempt to set out the ownership structure of any of the parties.

and FNB, among other defendants.[3] Bishop added Rossmann as a defendant approximately ten months later, asserting he was responsible under section 171.255 of the tax code for debts incurred by LTHM and WestMed after they forfeited their corporate privileges in March 2012.[4]

All parties filed motions for summary judgment. As relevant to this appeal, the trial court granted Bishop's motion for summary judgment as to the liability of LTHM and WestMed for breach of contract. The trial court also partially granted Rossmann's motion for summary judgment on the grounds he was not personally liable to Bishop and ruled Rossmann was not liable for Bishop's claims based on (i) all amounts due and unpaid under the Leases as of termination, (ii) fair market rental values of the leased suites from the date that LTHM vacated the premises until the date the suites were re-let, and (iii) the difference between the fair market rental value of the leased suites from the date they were re-let through the end of the lease terms and the rental received from the new tenants through the end of the lease terms. The trial court denied Rossmann's motion for summary judgment as to Bishop's claims for its costs to re-let the leased spaces and for the unamortized portion of a construction allowance, brokers' fees, and other transactional costs. The trial court granted Rossmann and Dufek's motion for summary judgment as to Bishop's claims based on violations of the Texas Uniform Fraudulent Transfer Act, conspiracy, alter ego, and tortious interference.

At trial, Bishop's live claims were breach of contract against LTHM, WestMed, and Dufek for all Bishop's claimed damages. Bishop also asserted Rossmann was liable under section 171.255 of the tax code for the two categories of damages that survived summary judgment. The trial court signed a final judgment awarding Bishop $324,000 from LTHM, WestMed, Dufek, and Rossmann, jointly and severally, with Rossmann's liability limited to

---

[3] FNB, LTHM–RE, and the other defendants were either granted summary judgment or voluntarily nonsuited by Bishop.

[4] On July 27, 2012, the Texas Secretary of State declared forfeited LTHM's and WestMed's corporate charters because they had not revived their corporate privileges within 120 days after the corporate privileges were forfeited.

$83,560.90. The trial court also awarded Bishop $119,100 in attorney's fees from LTHM, WestMed, Dufek, and Rossmann, jointly and severally, with Rossmann's liability limited to $48,250.

Dufek and Rossmann appealed the trial court's judgment. Bishop also filed a notice of appeal, but did not raise any issues seeking affirmative relief in its brief.

**Rossmann's Appeal**

In his first two issues, Rossmann asserts the trial court erred as a matter of law by rendering judgment against him based on the breach of the Leases because he is not personally liable under section 171.255 of the tax code and there is factually insufficient evidence to support the damages awarded. In his third issue, Rossmann contends the trial court erred by awarding Bishop attorney's fees because there is no statutory or contractual authority that entitles Bishop to recover attorney's fees, Bishop failed to present a claim to Rossmann, and Bishop failed to segregate its fees.

In his first issue, Rossmann specifically argues section 171.255 of the tax code does not impose personal liability on him because all of Bishop's damages were based on LTHM's and WestMed's breach of the Leases and the guaranties and, therefore, were created or incurred prior to the forfeiture of their corporation privileges. We review questions of statutory construction de novo. *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389 (Tex. 2014); *Williams v. Adams*, 74 S.W.3d 437, 439 (Tex. App.—Corpus Christi 2002, pet. denied).

Chapter 171 of the tax code governs franchise taxes. Under section 171.251, the comptroller is required to forfeit the corporate privileges of a corporation on which the franchise tax is imposed if the corporation fails to file a required report, pay the tax imposed or a penalty relating to that tax, or permit the comptroller to examine its corporate records. TEX. TAX CODE ANN. § 171.251 (West 2008). If the corporate privileges of a corporation are forfeited, each

–5–

director or officer of the corporation is liable for a debt of the corporation as provided by section 171.255 of the tax code. *Id*. § 171.252(2). Section 171.255(a) provides:

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.

Tex. Tax Code Ann. § 171.255(a) (West 2008). Section 171.255 is intended to hold those directors and officers liable who "have abused the corporate privilege by continuing to create and incur debts after the franchise tax is delinquent (ultimately leading to forfeiture of those privileges) and are, therefore, 'culpable.'" *PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 883 (Tex. App.—Dallas 2007, no pet.); *see also In re Trammell*, 246 S.W.3d 815, 822 (Tex. App.—Dallas 2008, orig. proceeding) ("[I]t is the director's or officer's consent to and approval of the corporate debts that leads to their personal liability."); *Williams*, 74 S.W.3d at 442 (liability under section 171.225(a) is that which results from and is attributable to the acts of the directors and officers) (quoting *First Nat'l Bank of Boston v. Silberstein*, 398 S.W.2d 914, 916 (Tex. 1966) (decided under predecessor statute)). However, because section 171.255 is penal in nature, it should be "strictly construed to protect those individuals against whom liability is sought." *PACCAR*, 239 S.W.3d at 882 (quoting *Rogers v. Adler*, 696 S.W.2d 674, 677 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)); *see also Williams*, 74 S.W.3d at 440.

In this case, Rossmann moved for summary judgment on the ground he was not personally liable under section 171.225(a) for Bishop's damages. The trial court granted the motion in part and denied it in part and allowed Bishop to proceed to trial against Rossmann on its claims for damages based on its costs to re-let the two suites and for the unamortized portion

of a construction allowance, brokers' fees, and other transactional costs. Bishop does not dispute that its claim for these damages is premised on the breach of the Leases.

In *Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109 (Tex. App.—Dallas 1984, no writ), this Court considered the application of section 171.255(a) to a breach of contract claim. Curry Auto Leasing, Inc. (Curry Auto), the plaintiff, and Physicians Accounting Services, Inc. (PAS) entered into a motor vehicle lease agreement on December 1, 1980. *Id.* at 110. PAS failed to pay the monthly rental due beginning in May 1982, and Curry Auto terminated the lease. *Id.* Curry Auto repossessed the leased vehicle on September 10, 1982. *Id.* On September 15, 1982, the corporate privileges of PAS were forfeited by the comptroller. *Id.*

The lease provided that, if it was terminated, the leased vehicle was to be sold. *Id.* at 111. "Promptly" after the sale, Curry Auto was required to deliver to PAS a statement showing the amount of profit or loss from the sale. *Id.* A final settlement between the parties was required to be made within fifteen days of the delivery of the statement. *Id.* In October 1982, Curry Auto sold the repossessed vehicle for a loss of $6,499.82. *Id.* It also paid, after repossessing the vehicle, $27 in storage fees and charged PAS a $10 late payment fee for September when rent was not paid on September 1st. *Id.* "These items were all ascertained, paid, or charged after Curry Auto exercised its option to terminate the rental contract and after [PAS's] corporate privileges had been forfeited." *Id*

Curry Auto asserted the loss incurred when it sold the leased vehicle, the storage fees, and the late payment fee were debts of PAS that were created or incurred after its corporate privileges were forfeited and, therefore, were recoverable under section 171.255 from each of PAS's officers. *Id.* We disagreed, first noting the statute did not impose liability on the officers of PAS "if the obligations, circumstances, conduct, or transactions that create or incur the debt in question pre-existed the forfeiture." *Id.* at 112. We concluded that "performance or

implementation of the contractual provisions relate back to and are authorized at the time of the execution of the contract." *Id.* Because the debt Curry Auto sought to recover from the officers of PAS was authorized by the leasing agreement, it "was brought into existence, caused by, resulted from, or arose out of the performance or implementation of the provisions of the rental contract at the time Curry Auto opted to terminate the contract." *Id.* These items related back to PAS's promise to pay that was made in the rental contract executed before its corporate privileges were forfeited. *Id.* Accordingly, no debt was created or incurred after the forfeiture for which the corporate officers were liable. *Id.*; *see also McCarroll v. My Sentinel, L.L.C.*, No. 14-08-01171-CV, 2009 WL 4667403, at *3 (Tex. App.—Houston [14th Dist.] Dec. 10, 2009, no pet.) (mem. op.) (in context of breach of contract, relevant event under 171.255(a) is "when the contract in question was executed, not when the breach occurred"); *McKinney v. Anderson*, 734 S.W.2d 173, 174–75 (Tex. App.—Houston [1st Dist.] 1987, no writ).

Under *Curry*, all of Bishop's claimed damages for LTHM's and WestMed's breach of their agreements, including the costs to re-let the leased suites after termination of the Leases and the unamortized construction allowance, brokers fees, and other transactional costs, were created or incurred when the Leases were entered into in 2010, not in 2012 after the forfeiture of LTHM's and WestMed's corporate privileges. *See Curry*, 683 S.W.2d at 112; *see also Beesley v. Hydrocarbon Separation Inc.*, 358 S.W.3d 415, 422 (Tex. App.—Dallas 2012, no pet.). Bishop, however, asserts the reasoning in *Curry* is not applicable following the Legislature's enactment in 1987 of section 171.109 of the tax code that defined "debt" under chapter 171 as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735. Bishop argues that, because the cost to re-let the two suites and the amount of the unamortized construction

allowance, brokers fees, and other transactional costs were not known until after LTHM's and WestMed's corporate privileges were forfeited, Rossmann, as an officer and director of both corporations, can be held liable for these costs. We disagree.

Effective January 1, 2008, the Legislature repealed the definition of "debt" relied upon by Bishop, *see* Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 24, and the statutory definition was not in effect at the time of any relevant event in this case. However, even if the statutory definition relied upon by Bishop was applicable to this case, we cannot conclude it would impact the result. In 1984, the supreme court defined "debt" as "a specified sum of money owing to one person from another, including not only [an] obligation of [a] debtor to pay but [the] right of [a] creditor to receive and enforce payment." *Seay v. Hall*, 677 S.W.2d 19, 23 (Tex. 1984) (quoting BLACK'S LAW DICTIONARY 363 (5th ed. 1979)); *see also Surber v. Woy*, No. 02-12-00452-CV, 2014 WL 1704258, at *5 n. 15 (Tex. App.—Fort Worth Apr. 30, 2014, no pet.) (mem. op.) (applying similar definition of "debt" from BLACK'S LAW DICTIONARY 462 (9th ed. 2009) to section 171.255(a)). The definition of "debt" in *Seay* is very similar to the one added by the Legislature to chapter 171 in 1987. This Court applied the definition of "debt" set out in *Seay* to section 171.255(a) in *Rogers v. Adler*, 696 S.W.2d, 674, 676–77 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), and concluded the fact the amount of the debt was not ascertained at the time the corporate privileges were forfeited did not establish the debt was created or incurred after forfeiture. Rather, the debt was brought into existence, caused by, resulted from, or arose out of the purchase contract with the defendant. *Id.* at 677 (citing *Curry*, 683 S.W.2d at 112).

The damages that Bishop seeks to recover from Rossmann are based on the provisions of the Leases. This debt arose out of the performance or implementation of the provisions of the rental contracts and was created or incurred when the Leases were entered into in 2010. *See*

*Curry*, 683 S.W.2d at 112; *McCarroll*, 2009 WL 4667403, at \*3; *McKinney*, 734 S.W.2d at 174–75. Because the debt was not created or incurred after LTHM's and WestMed's corporate privileges were forfeited, Rossmann cannot be held liable for the debt under section 171.255(a) of the tax code.

We resolve Rossmann's first issue in his favor. Further, because Bishop has not prevailed on its claim against Rossmann, we resolve Rossmann's third issue, asserting there is no statutory or contractual basis for the award of attorney's fees to Bishop, in his favor. *See Ball v. Rao*, 48 S.W.3d 332, 336–37 (Tex. App.—Fort Worth 2001, pet. denied) (because judgment was reversed on appeal, appellees were no longer prevailing party and were not entitled to attorney's fees). Based on our resolution of Rossmann's first issue, we need not consider his second issue pertaining to the sufficiency of the evidence to support the damages awarded to Bishop. *See* TEX. R. APP. P. 47.1. We reverse the trial court's judgment as to Rossmann and render judgment that Bishop take nothing on its claims against him.

### Dufek's Appeal

In its first issue, Dufek complains the trial court erred by failing to grant a directed verdict in its favor because Bishop's claims were barred by the statute of frauds.[5] In two additional issues, Dufek asserts the trial court erred by awarding Bishop attorney's fees because Bishop's claims are barred by the statute of frauds and it failed to present a claim to Dufek.

### *Preservation of Statute of Frauds Defense*

Bishop initially asserts we need not reach the merits of Dufek's first issue because Dufek's statute of fraud defense was not properly before the trial court. Bishop specifically argues Dufek failed to disclose the defense in response to Bishop's discovery request and,

---

[5] Because there was a bench trial in this case, this motion is more accurately termed a "motion for judgment." *Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d 839, 841 (Tex. App.—Dallas 2009, no pet.).

–10–

therefore, the defense was automatically excluded pursuant to rule of civil procedure 193.6.[6] Bishop, however, failed to preserve this argument for appeal.

In its original answer, Dufek pleaded the affirmative defense of the statute of frauds. Bishop served an interrogatory on Dufek requesting the "legal bases and general factual basis for [Dufek's] affirmative defense of statute of frauds." Dufek responded:

> Objection, calls for a legal conclusion. This request calls for [Dufek] to marshal all of its evidence and is therefore overbroad, unduly burdensome and harassing. The agreement between [Bishop] and [LTHM] and the agreement between [Bishop] and [WestMed] is subject to the statute of frauds.[7]

Dufek moved for summary judgment on Bishop's breach of contract claim on the ground that a lease of real estate for a term longer than one year was not enforceable unless it was in writing and signed by the person to be charged. Dufek asserted it did not execute the Leases, had not assumed the Leases, and had not taken possession of the leased suites. Bishop responded to the motion for summary judgment arguing FNB assigned the Leases to Dufek in the bill of sale following the foreclosure sale. The trial court denied Dufek's motion for summary judgment.

On the first day of trial, Dufek filed a trial brief arguing a contract for the assignment of a lease of real property was subject to the statute of frauds. Bishop's counsel asserted in his opening statement that Dufek bought the Leases following the foreclosure sale and took the

---

[6] Rule of civil procedure 193.6(a) provides:

> *Exclusion of Evidence and Exceptions.* A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). We note that Bishop's objection in the trial court was not to any specific evidence offered by Dufek. Rather, Bishop attempted to preclude Dufek from arguing how the applicable law applied to the facts. *See Bundren v. Holly Oaks Townhomes Ass'n Inc.*, 347 S.W.3d 421, 431 (Tex. App.—Dallas 2011, pet. denied) ("properly pled claims for affirmative relief, as opposed to withheld evidence, are not abandoned or waived by a party's failure to expressly identify those claims in response to a discovery request"). Because we conclude Bishop failed to preserve its argument for our review, we need not consider whether Bishop's objection properly fell within rule 193.6(a).

[7] This question and answer was set out in Bishop's trial brief on the statute of frauds. Dufek's actual response to the interrogatory is not in our record on appeal. Dufek does not, however, contest the accuracy of the information contained in Bishop's trial brief.

–11–

benefit of the Leases by pledging them as collateral for a loan to FNB. Dufek's counsel stated during his opening statement that the statute of frauds was a complete bar to Bishop's breach of contract claim because there was no contract between Bishop and Dufek and no assignment of the Leases that was signed by Dufek. Bishop objected that Dufek failed to disclose in its discovery responses that the bill of sale signed by FNB did not comply with the statute of frauds. The trial court stated it would allow Dufek's counsel to finish his opening statement. Prior to calling its first witness, Bishop again objected that Dufek failed to disclose in its discovery responses that the bill of sale did not comply with the statute of frauds. The trial court stated it would "address this as we go along."

The following day before trial began, Bishop filed a trial brief regarding the statute of frauds. Bishop once again asserted the defense was barred by the automatic exclusion set out in rule 193.6 due to Dufek's failure to disclose its claim the defense applied to the bill of sale. Bishop also substantively argued the statute of frauds did not bar its breach of contract claim against Dufek. The trial court paused the proceedings to read the briefing and then stated, "The issue I want to focus on here is I think the property is adequately described, so I don't want to go into that, but the fundamental issue is the assignment was never approved by [Bishop], which I think is required under the contract, and the assignment is for more than five years." The trial court did not address Bishop's argument under rule 193.6. Both Bishop's and Dufek's attorneys discussed the applicability of the statute of frauds in closing arguments. At the conclusion of trial, the trial court orally made a substantive ruling that the statute of frauds had been satisfied. There is no indication in the record that the trial court ruled on Bishop's objection under rule 193.6.

We conclude that, by failing to obtain a ruling from the trial court, Bishop waived its objection that rule 193.6 required the exclusion of evidence relating to Dufek's contention the

–12–

bill of sale did not comply with the statute of frauds. *See* TEX. R. APP. P. 33.1(a)(2). However, even if we assume the trial court implicitly overruled Bishop's objection, Bishop failed to raise an affirmative complaint about that implicit ruling on appeal. Under either circumstance, the substantive merits of Dufek's statute of frauds defense is presented for our review.

*Applicability of Statute of Frauds*

In its first issue, Dufek asserts the trial court erred by denying Dufek's motion for directed verdict because (1) the Leases are subject to the statute of frauds, (2) LTHM did not make a written assignment of the Leases to Dufek, (3) Dufek did not sign the bill of sale, (4) the Leases prohibited an assignment without Bishop's written consent, (5) the bill of sale failed to describe the real property being assigned with reasonable certainty, and (6) no exception to the statute of frauds applies.

The statute of frauds concerns problems of proof and exists to prevent fraud and perjury in certain types of transactions by requiring agreements to be in writing and signed by the party to be charged. *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001); *Holloway v. Dekkers*, 380 S.W.3d 315, 320 (Tex. App.—Dallas 2012, no pet.); *see also* TEX. BUS. & COM. CODE ANN. § 26.01(a) (West 2009). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. TEX. BUS. & COM. CODE ANN. § 26.01(a); TEX. R. CIV. P. 94; *Holloway*, 380 S.W.3d at 320. The party relying on the statute of frauds as a defense has the burden of establishing its applicability. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013). Whether a contract falls within the statute of frauds is a question of law subject to de novo review. *Id.* at 642.

The statute of frauds encompasses the transfer or assignment of an agreement to lease real estate for a term longer than one year. TEX. BUS. & COM. CODE ANN. § 26.01(b)(5) (statute of frauds encompasses agreement for lease of real property for term of more than one year);

–13–

*Long Trusts v. Griffin*, 222 S.W.3d 412, 416 (Tex. 2006) (per curiam) (contracts for transfer or assignment of oil and gas interests, including leases, subject to statute of frauds).  For such an agreement to be enforceable, it must contain a sufficient description of the property to be conveyed.  *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008).  A conveyance of real property which fails to describe a definite tract of land is void.  *Id.*; *see also Reeder v. Curry*, 426 S.W.3d 352, 359 (Tex. App.—Dallas 2014, no pet.).

The purpose of a description in a written conveyance is not to identify the land, but to afford a means of identification.  *Ardmore, Inc. v. Rex Grp., Inc.*, 377 S.W.3d 45, 56 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (citing *Jones v. Kelley*, 614 S.W.2d 95, 99 (Tex. 1981)).  "A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty."  *AIC Mgmt.*, 246 S.W.3d at 645; *see also Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)); *Reeder*, 426 S.W.3d at 359.  The writing does not have to contain a metes and bounds description to be enforceable, but must provide the necessary information to identify the property with reasonable certainty.  *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996) (per curiam); *Reeder*, 426 S.W.3d at 359.

While the sufficiency of the writing under the statute of frauds is a question of law, the trial court may properly consider evidence to determine whether a person familiar with the area could locate the premises with reasonable certainty.  *May v. Buck*, 375 S.W.3d 568, 574 (Tex. App.—Dallas 2012, no pet.).  "If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds."  *Apex Fin. Corp. v. Garza*, 155 S.W.3d 230, 237 (Tex. App.—Dallas 2004, pet. denied); *see also May*, 375 S.W.3d at 574.  However, even if the record leaves little doubt that the parties knew and understood what property was intended to be conveyed, the knowledge and intent of

the parties will not give validity to the contract. *Morrow*, 477 S.W.2d at 540; *Reeder*, 426 S.W.3d at 359.

Here, LTHM signed two agreements to lease real property for a term of more than one year. Dufek did not sign the Leases and there is no evidence of any other contract between Dufek and Bishop concerning the leased suites. Bishop asserts the Leases are enforceable against Dufek based on the bill of sale, signed by FNB but not Dufek, that transferred certain of LTHM's assets to Dufek following foreclosure. However, the only applicable description of property assigned to Dufek by FNB in the bill of sale was "[a]ll leases, including ground leases." This description does not reference LTHM's Leases with Bishop and provides no information that would enable a person familiar with the area to locate the premises with any reasonable certainty. Accordingly, Dufek established the statute of frauds applies and, absent an exception, bars the enforcement of the Leases against it.

*Exception to Statute of Frauds*

Once Dufek met its burden of establishing the statute of frauds applies to Bishop's breach of contract claim, the burden shifted to Bishop to establish the existence of an exception to the statute of frauds. *Dynegy, Inc.*, 422 S.W.3d at 641. Bishop argues three different exceptions apply: (1) delivery and acceptance, (2) performance, and (3) equitable estoppel. The question of whether an exception to the statute of frauds applies is generally a question of fact. *Holloway*, 380 S.W.3d at 321.

Preservation

Dufek asserts Bishop waived the claimed exceptions by failing to plead either equitable estoppel or performance and by failing to obtain a finding from the trial court on any of the exceptions. *See Dynegy, Inc.*, 422 S.W.3d at 641 (party relying on exception to statute of frauds has burden to plead, prove, and obtain finding on exception or risk waiver under rule of civil

procedure 279).  However, Bishop raised all these exceptions during trial without objection from Dufek.

As to Bishop's failure to obtain findings from the trial court on the claimed exceptions, the "purpose of requesting the trial court to make written findings of fact and conclusions of law is to 'narrow the bases of the judgment to only a portion of [the multiple] claims and defenses, thereby reducing the  number of contentions that the appellant must raise on appeal.'"  *Larry F. Smith, Inc. v. The Weber Co., Inc.*, 110 S.W.3d 611, 614 (Tex. App.—Dallas 2003, pet. denied) (quoting 6 McDonald & Carlson, TEXAS CIVIL PRACTICE 2d § 18:3 (1998)).  When the trial court fails to make findings of fact and conclusions of law, we must imply all facts necessary to support the trial court's judgment that are supported by the evidence and must affirm the trial court's judgment if it can be upheld on any legal theory supported by the evidence.  *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (per curiam); *J.C. Penney Co., Inc. v. Ozenne*, No. 05-13-01601-CV, 2014 WL 7234354, at *3 (Tex. App.—Dallas Dec. 19, 2014, no pet. h.).  Here, Bishop obtained a judgment in its favor, which could have been based on the trial court finding that Bishop had established one of the raised exceptions to the statute of frauds.  Accordingly, we will consider whether the trial court's judgment may be affirmed based on the exceptions to the statute of frauds raised by Bishop.

<u>Analysis</u>

Bishop argues its breach of contract claim against Dufek is not subject to the statute of frauds based on delivery and acceptance, equitable estoppel, and performance.  All three of these claimed exceptions are grounded on the theory that the bill of sale from FNB transferring "[a]ll leases, including ground leases" to Dufek included the Leases and that Dufek then pledged the Leases as collateral to secure a loan from FNB.  Bishop, however, failed to establish that FNB

–16–

had a security interest in the Leases, foreclosed on that security interest, or transferred the Leases to Dufek.

The reporter's record does not contain all the documents relating to the financial relationship between FNB, WestMed, and LTHM. However, an October 21, 2001 Renewal, Modification, and Extension Agreement (the renewal agreement) between FNB, as the lender, and WestMed, LTHM, and LTHM–RE, as the obligors, lists seven loans between October 30, 2009 and May 11, 2011, with a total principal amount of over fifty-seven million dollars. The renewal agreement lists a number of security agreements and deeds of trust, but does not specifically identify any security agreement relating to the Leases. Under "property," the renewal agreement lists fourteen categories of property. Category thirteen is "[a]ll leases, including ground leases." There is no further identifying information regarding these leases.

FNB foreclosed on a promissory note securing a May 10, 2011 loan that WestMed and LTHM failed to pay. The Notice of Substitute Trustee's Sale in the record lists three tracts of land that were subject to foreclosure, the property on which the hospital was situated, an easement estate, and a condominium. The Substitute Trustee's Deed filed in the county property records following the foreclosure sale indicated the same three tracts of land were conveyed to Dufek. The Leases were not included in either the Notice of Substitute Trustee's Sale or the Substitute Trustee's Deed.

The bill of sale indicates FNB also foreclosed on WestMed's and LTHM's other property in which it had taken a security interest and transferred those assets to Dufek. Although the reporter's record contains no documents relating to this foreclosure, FNB, in its November 15, 2011 demand letter to WestMed and LTHM, stated it intended to foreclose, under section 9.621 of the business and commerce code, on collateral securing a November 5, 2010 loan by accepting the collateral in full satisfaction of the obligation it secured. The collateral listed in the

–17–

demand letter included "[a]ll leases, including ground leases." The Leases, although signed in August 2010, had not commenced on November 5, 2010 and, without the documents relating to the November 5, 2010 loan, we are unable to determine whether those documents specifically mention the Leases. Further, the general description of "[a]ll leases, including ground leases" in the loan documents would be insufficient to create a security interest in the Leases under chapter 9 of the business and commerce code. *See* TEX. BUS. & COM. CODE ANN. § 9.108(a) (West 2011) ("description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described"); *Univ. State Bank v. Gifford-Hill Concrete Corp.*, 431 S.W.2d 561, 569 (Tex. Civ. App.—Fort Worth 1968, writ ref'd n.r.e.) (for security interest to attach, land must be properly described); *see also Sanders v. Comerica Bank, Inc.*, 274 S.W.3d 861, 863 (Tex. App.—Fort Worth 2008, no pet.) (security agreement must describe collateral with sufficient particularity to identify it). Finally, even assuming the general description of "all leases" was sufficient to describe the Leases, the terms of the Leases prohibited LTHM from mortgaging, pledging, or otherwise encumbering its interest in the Leases or the leased suites. Because LTHM did not have the power to encumber its interest in the Leases, no security interest would have attached to its interest in the Leases. *See* TEX. BUS. & COM. CODE ANN. § 9.203(b)(2) (West 2011) (except as to specified circumstances not applicable here, "a security interest is enforceable against the debtor and third parties with respect to the collateral only if: . . . (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party . . .").

To prevail on its breach of contract claim against Dufek, Bishop had the burden of establishing an exception to the statute of frauds. All of the exceptions raised by Bishop hinge on FNB having a security interest in the Leases, foreclosing on that security interest, and transferring the Leases to Dufek. However, on the record before us, Bishop failed to establish

FNB had a valid security interest in the Leases or that FNB foreclosed on that security interest. Accordingly, Bishop failed to meet its burden of proving an exception to the statute of frauds based on either delivery and acceptance, equitable estoppel, or performance.

Because Dufek met its burden of establishing the statute of frauds bars Bishop's breach of contract claim and Bishop failed to prove any exception to the statute of frauds applies to its claim, we resolve Dufek's first two issues in its favor and render judgment that Bishop take nothing against Dufek. Due to our resolution of Dufek's first two issues, we need not address its third issue. *See* TEX. R. APP. P. 47.1.

**Conclusion**

We reverse the trial court's judgment as to Rossmann and Dufek and render judgment that Bishop take nothing from either of these parties. In all other respects, the trial court's judgment is affirmed.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

131417F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DUANE K. ROSSMANN AND DUFEK
MASSIF HOSPITAL CORPORATION,
Appellants

No. 05-13-01417-CV     V.

BISHOP COLORADO RETAIL PLAZA,
L.P., Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. 12-00282.
Opinion delivered by Justice Fillmore,
Justice Bridges participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that:

Appellee Bishop Colorado Retail Plaza, L.P. take nothing on its claims against
appellees Duane K. Rossmann and Dufek Massif Hospital Corporation.

It is **ORDERED** that appellants Duane K. Rossmann and Dufek Massif Hospital
Corporation recover their costs of this appeal from appellee Bishop Colorado Retail Plaza, L.P.

Judgment entered this 3rd day of February, 2015.