**Opinion issued February 13, 2020**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-18-00849-CV

————————————

**YHR MASON ROAD PARTNERS, LP, Appellant**

**V.**

**7-7 CLEANERS, INC. AND
NHAN Q. HA A/K/A JOHN HA, INDIVIDUALLY, Appellees**

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Case No. 2015-68852**

---

## MEMORANDUM OPINION

Appellee, 7-7 Cleaners, Inc. ("Cleaners"), sued appellant, YHR Mason Road Partners, LP ("YHR"), for breach of a retail lease. YHR filed a counterclaim for unpaid rent against Cleaners and its president, Nhan Q. Ha, a/k/a John Ha, individually. After a bench trial, the trial court rendered judgment that both Cleaners

and YHR take nothing by their claims. Cleaners did not appeal. In two issues, YHR contends that the trial court erred in rendering a take-nothing judgment against it because Cleaners, having forfeited its corporate charter, was statutorily[1] precluded from advancing any defenses and because it was incumbent upon Cleaners, and not YHR, to plead and prove that YHR failed to mitigate its damages.

We reverse and remand.

## Background

In October 2006, Cleaners, which is primarily engaged in the dry-cleaning business, entered into a "Retail Lease Agreement" ("Lease") with YHR. Cleaners leased, for a term of 123 months, a commercial space ("Leased Premises") in the Centre at Mason Road Shopping Center ("Center"), located on South Mason Road in Katy, Texas. Pursuant to the terms of the Lease, Cleaners agreed to pay base rent of $4,250.00 per month, escalating over the term of the Lease to $5,250.00 per month.

Cleaners also agreed to pay, as "Additional Rent," its pro rata share of the Center's annual real property taxes, insurance, and common area maintenance, or "CAM."[2] Initially, Cleaners was to pay an estimated monthly share of $660.00 for

---

[1]    *See* TEX. TAX CODE § 171.252.

[2]    A lease in which the tenant's rent includes a percentage of the landlord's real property taxes, insurance, and common area maintenance is generally known as a "triple net lease." *Hoppenstein Props., Inc. v. Schober*, 329 S.W.3d 846, 850 n.2 (Tex. App.—Fort Worth 2010, no pet.).

taxes, $90.00 for insurance, and $300.00 for CAM. Thereafter, Cleaners was to pay monthly installments based on YHR's estimate at the beginning of each year of the total expenses that the Center would incur, subject to an end-of-year adjustment based on the actual expenses incurred. The Lease provided that YHR was to provide Cleaners with year-end statements of the actual expenses; however, any failure to timely provide such statements was not to be construed as a waiver of YHR's right to collect any underpayment by Cleaners. In the event that the actual expenses exceeded the initial estimates, Cleaners was to pay the deficiency within 10 days after receipt of YHR's invoice. Any failure to pay the monthly installments or year-end adjustment constituted a failure to pay rent and a default under the Lease.

The terms of the Lease imposed an administrative charge, or late fee, in the event that Cleaners was past due on rent for more than 10 days. The Lease noted, however, that YHR's acceptance of "any late payment or partial payment of Rental and/or any administrative charge due" did not constitute a waiver of any of YHR's rights and remedies. And, YHR, at its sole discretion, retained the option to accept the tendered payment or to pursue its rights and remedies.

The Lease terms further provided that, in the event that YHR elected to terminate the Lease based on any default by Cleaners, Cleaners was to pay, as damages, the then present value of the remainder of the Lease term. The Lease

3

reflects that Cleaners's president, Ha, personally guaranteed Cleaners's obligations under the Lease.

It is undisputed that, from 2006 to 2015, Cleaners regularly did not pay its rent when due. It is further undisputed that Cleaners did not pay its 2014 taxes, insurance, and CAM, or its September and October 2015 rent, when due. Although Cleaners later tendered payment, YHR returned its checks and declared the Lease terminated. On November 9, 2015, YHR filed a suit for eviction against Cleaners, and YHR was awarded possession of the Leased Premises. At the time of eviction, fifteen months remained in the Lease term.

On November 17, 2015, Cleaners sued YHR for breach of the Lease, alleging that, in June 2014, the roof of the Leased Premises had begun leaking after heavy rains, which caused business interruptions and loss of income. Cleaners asserted that it sent a series of emails to YHR demanding repairs. And, although YHR hired contractors who made several attempts to repair the roof, the roof continued to leak. Cleaners asserted that YHR breached the Lease by failing to timely repair the roof.

Cleaners further alleged that it was wrongfully evicted for non-payment of rent because the parties had "created an estoppel, [or] a pattern of business practices," in which Cleaners regularly paid late. Cleaners sought a judgment declaring that the parties' pattern of business practices over the preceding nine years had "created an estoppel" and had "become part of the Lease," which authorized

4

Cleaners to pay late, as long as it paid late fees. In addition, Cleaners asserted, YHR breached the Lease by failing to provide an itemization of the 2014 taxes, insurance, and CAM, as requested. Cleaners sought $231,947.00 in damages for "the value of [its] business, including the purchase price of [the dry-cleaning equipment] of $56,000 and depreciation."

YHR answered, generally denying the allegations and asserting that Cleaners lacked capacity to sue because it had forfeited its corporate charter. YHR also filed a counterclaim for breach of the Lease, alleging that Cleaners had failed to pay rent and maintain insurance, as required. And, YHR asserted that, because Cleaners had forfeited its corporate charter, its sole shareholder, director, and officer, Ha, was individually liable for the damages. Further, YHR brought a claim against Ha, alleging that he had personally guaranteed Cleaners's obligations under the Lease. YHR sought unpaid rent, fees, interest, and attorney's fees against Cleaners and Ha.

The trial court granted a temporary restraining order in favor of Cleaners, ordering that it post a bond of $8,000.00 and directing that YHR allow it access to the Leased Premises. After Cleaners did not move forward on its application for a temporary injunction, however, the trial court ordered the district clerk to release the bond to YHR.

At trial, YHR argued that Cleaners lacked capacity to assert its claims, or to defend against YHR's counterclaims, because the Texas Secretary of State ("SOS"),

on August 7, 2009, had forfeited Cleaners's corporate charter for failing to pay franchise taxes, and the charter had not been revived. The trial court admitted into evidence a certified statement from the SOS. The trial court also admitted a statement from the Texas Comptroller ("Comptroller"), reflecting that, as of December 9, 2015, Cleaners's charter remained forfeited at the SOS and that Cleaners's right to transact business in the State of Texas remained "Involuntarily Ended."

Cleaners asserted that its charter was reinstated on December 18, 2015, but was again forfeited on January 27, 2017. It asserted, however, that during the week prior to trial, which commenced on June 18, 2018, it had filed its outstanding tax reports for years 2016 and 2017 with the Comptroller and that its corporate privileges had been reinstated. In support, Cleaners presented receipts, dated June 12, 2018, reflecting that it had filed online "No Tax Due Reports" for years 2016 and 2017. The receipts reflect that a "late filing fee" of $50.00 for each year remained outstanding.

The trial court, noting that Cleaners's filing receipts did not prove that the SOS had set aside the forfeiture of Cleaners's charter or that its corporate privileges had been reinstated, directed Cleaners to access the internet during trial to determine the status of its charter with the SOS. The following discussion then took place:

THE COURT: What did we discover? Anything?

6

| [Counsel for Cleaners]: | Yes, your Honor. The documents from the State show[] that it was reinstated on December 18th of 2015, but then it got forfeited again on January 27, 2017. |
| THE COURT: | Okay. So, as of today, according to the Office [of the] Secretary of State, are the privileges active or forfeited? |
| [Counsel for Cleaners]: | It is forfeited at this time, your Honor. It has not updated in the computer system. |
| THE COURT: | Okay. |

To afford Cleaners an opportunity to cure the matter, the trial court ruled that it would move forward with trial and carry YHR's motion to strike Cleaners's pleadings for lack of corporate capacity.

Ha testified that, although Cleaners was late in paying rent approximately 98 times, it had paid late fees each time. Ha complained that, in March 2015, YHR had demanded an additional $3,400.00 in taxes, insurance, and CAM for 2014. And, at the time of eviction, YHR still had not provided the statement that Cleaners had demanded. Ha testified that Cleaners was unable to afford the fire and pollution insurance required under the Lease and did not maintain such coverage.

Cathy McGlohn, a property management assistant at YHR, testified that, between June 14, 2013 and June 26, 2015, Cleaners submitted eight requests for roof repairs. The trial court admitted into evidence a repair log, reflecting ten occasions, from 2013 to 2015, in which YHR had reported the leaks to its roofing contractor and various repairs were made. The log also reflects that YHR hired three different

7

contractors to make repairs. And, in 2016, YHR spent $243,380.00 in major repairs to the roof. The trial court noted that Cleaners did not present an expert witness to support its claim that YHR had failed to "reasonably" repair the roof in 2015. The trial court explained that, from the evidence presented, it could not discern the nature of the leaks and whether the same leaks were recurring or new ones were forming.

The trial court also admitted into evidence numerous emails, letters, statements, and certified mail receipts reflecting that, from 2009 to 2015, YHR repeatedly notified Cleaners that it had failed to pay rent in accordance with the terms of the Lease and that it had failed to maintain the required insurance. YHR repeatedly demanded that Cleaners comply with the Lease terms and, in four instances, YHR terminated Cleaners's possession of the Leased Premises by lockout. The trial court noted that, although Cleaners had paid late almost every month for nine years, there was never an occasion in which it had gone over 30 days late until October 2015, when YHR finally terminated the Lease.

On October 2, 2015, counsel for YHR sent notice to Cleaners that, unless YHR received payment of the total amount due, $18,965.20, within five days, YHR would consider the Lease in default. On October 8, 2015, Cleaners tendered two checks, totaling $7,700.68, which YHR returned. On October 21, 2015, Cleaners tendered two more checks, which YHR again returned, along with a letter explaining that YHR was terminating the Lease and demanding that Cleaners vacate.

8

At the close of trial, the trial court directed YHR to file a post-trial brief itemizing its damages. In its post-trial brief, YHR sought $138,964.16 in net rent, $13,712.61 in "clean up" fees, interest, and attorney's fees. The trial court directed Cleaners to provide, no later than June 25, 2018, verification from the SOS or Comptroller that, as of June 18, 2018 (the date of trial), its charter had been reinstated and that Cleaners was authorized to do business in the State of Texas. Otherwise, the trial court noted, it would grant YHR's motion to strike Cleaners's pleadings, which would "eliminate [Cleaners's] claims and result in a Defense Verdict."

On June 25, 2018, Cleaners filed a "Tax Clearance Letter" from the Comptroller to Cleaners, dated June 21, 2018, stating that Cleaners had "met all franchise tax requirements" and was "eligible for reinstatement." The letter notes that it "must be filed with the Texas Secretary of State" and directs Cleaners on how to file for reinstatement. Cleaners also filed a copy of its "Application for Reinstatement and Request to Set Aside Revocation or Forfeiture" to the SOS.

On June 27, 2018, the trial court signed a final judgment, ordering that each party take nothing on its claims. Subsequently, the trial court entered findings of fact and conclusions of law as follows, in pertinent part:

> 3. During the term of the [Lease] from approximately June of 2014 to October of 2015, [Cleaners] made multiple complaints regarding the roof of the leased premises which leaked causing disruption in [Cleaners's] dry cleaning business.

9

4. It was not until [Cleaners] was evicted from the premises in question that [YHR] made proper repairs to [the] roof . . . .

5. In September of 2015 [Cleaners] failed to make the rent payment due under the lease because [Ha] was traveling overseas during that month. Upon his return to the United States [Cleaners] attempted to make the rent payment for September and October of 2015. [YHR] refused to accept the late rent payment as it had in the past and demanded possession of the leased premises.

The trial court entered conclusions of law as follows:

1. [YHR] breached the lease in the following manner[]:

   a. failing to properly repair the roof of the leased premises, and

   b. failing to provide [Cleaners] with a breakdown of additional [rent] based on [CAM], taxes and insurance.

2. [Cleaners] breached the lease in the following manner[]:

   a. failing to make timely rent payments in September and October of 2015,

   b. failing to maintain proper insurance on the leased premises.

3. There was no evidence presented at trial that [YHR] made commercially reasonable efforts to re-lease the premises in question following the eviction of [Cleaners] from the lease premises in November of 2015.

## Capacity

In its second issue, YHR argues that the trial court erred in rendering a take-nothing judgment against it on its counterclaim for unpaid rent because Cleaners, having forfeited its corporate privileges, was statutorily precluded from advancing a defense to YHR's counterclaims.

10

## A.    *Standard of Review and Legal Principles*

Capacity is a party's legal authority to go into court to prosecute or defend against a suit. *El T. Mexican Restaurants, Inc. v. Bacon*, 921 S.W.2d 247, 249–50 (Tex. App.—Houston [1st Dist.] 1995, writ denied). Whether a party has capacity is a question of law, which we review de novo. *Byrd v. Estate of Nelms*, 154 S.W.3d 149, 155 (Tex. App.—Waco 2004, pet. denied). Generally, a corporation that has forfeited its corporate privileges or its corporate charter due to nonpayment of franchise taxes lacks capacity. *See Transam. Corp. v. Braes Woods Condo. Assoc., Inc.*, 580 S.W.3d 733, 736 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *El T. Mexican Restaurants, Inc.*, 921 S.W.2d at 250. The forfeiture of corporate privileges and the forfeiture of a charter are two distinct and successive forfeitures, governed by different statutory provisions and carried out by two different governmental officers—the Comptroller and the SOS, respectively. *El T. Mexican Restaurants, Inc.*, 921 S.W.2d at 250, 252–53 n.2, 10 (discussing "Stages of Corporate Decay").

The Texas Tax Code provides that if a corporation does not timely report and pay its franchise taxes or applicable penalties, the Comptroller "shall forfeit the corporate privileges" of the corporation. TEX. TAX CODE § 171.251. If "corporate privileges" are forfeited under this subchapter:

> (1)    the corporation ***shall be denied the right to sue or defend*** in a court of this state; and

(2) each director or officer of the corporation is liable for a debt of the corporation as provided by Section 171.255 of this code.

*Id.* § 171.252 (emphasis added). Section 171.255 provides:

If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. . . .

*Id.* § 171.255(a). "Section 171.255 is intended to hold those directors and officers liable who have abused the corporate privilege by continuing to create and incur debts after the franchise tax is delinquent (ultimately leading to forfeiture of those privileges) and are, therefore, culpable." *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 134 (Tex. App.—Fort Worth 2016, no pet.) (internal quotations omitted); *Rossmann v. Bishop Colorado Retail Plaza, L.P.*, 455 S.W.3d 797, 803 (Tex. App.—Dallas 2015, pet. denied) (noting that statute does not impose liability on officers "if the obligations, circumstances, conduct, or transactions that create or incur the debt in question pre-existed the forfeiture").

The Comptroller "shall revive" corporate privileges "if the corporation, *before the forfeiture of its charter* . . . pays any tax, penalty, or interest due under this chapter." TEX. TAX CODE § 171.258 (emphasis added). If the corporation does not revive its corporate privileges within 120 days after forfeiture, the Comptroller "shall" certify the name of the corporation to the SOS. *Id.* § 171.302.

12

The SOS "may" forfeit the corporation's charter if: (1) the SOS receives the Comptroller's certification under section 171.302 and (2) the corporation "does not revive its forfeited privileges within 120 days after the date that the privileges were forfeited." *Id.* § 171.309. The SOS effects a forfeiture by inscribing on the corporation's record at the SOS the words "Charter Forfeited," the date on which this inscription is made, and a citation to this chapter. *Id.* § 171.311.

A corporation whose charter has been forfeited by the SOS under this chapter is entitled to have its charter revived, and to have its corporate privileges revived, if:

(1)     the corporation files each report that is required by this chapter and that is delinquent;

(2)     the corporation pays the tax, penalty, and interest that is imposed by this chapter and that is due at the time the request under Section 171.313 of this code to set aside forfeiture is made; and

(3)     the forfeiture of the corporation's charter or certificate is set aside in a proceeding under Section 171.313 of this code.

*Id.* § 171.312. A stockholder, director, or officer of the corporation at the time of the forfeiture of the charter may request in the name of the corporation that the SOS set aside the forfeiture. *Id.* § 171.313. The SOS "shall determine if each delinquent report has been filed and any delinquent tax, penalty, or interest has been paid." *Id.* If so, the SOS "shall set aside" the forfeiture of the corporation's charter. *Id.* If the SOS sets aside the forfeiture of the charter, the Comptroller "shall revive" the corporate privileges of the corporation. *Id.* § 171.314.

"Once the corporation pays the delinquent taxes and is reinstated, the payment relates back and revives the corporate rights that were forfeited." *Flameout Design and Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 839 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

**B.**     *Analysis*

As a threshold matter, we note that the record does not reflect that the trial court expressly ruled on YHR's assertion that Cleaners lacked capacity to defend against YHR's counterclaim.

In its findings and conclusions, the trial court concluded that Cleaners breached the Lease by "failing to make timely rent payments in September and October of 2015." However, the trial court found in favor of Cleaners on its defense that YHR breached the Lease first by "failing to properly repair the roof" between June 2014 and October 2015, and failing to provide Cleaners with a "breakdown" of the 2014 taxes, insurance, and CAM. And, in its final judgment, the trial court ruled that YHR take nothing on its counterclaim for unpaid rent.

Thus, in concluding that Cleaners prevailed on its defense, the trial court implicitly ruled that Cleaners had the capacity to so defend. *See Lenz v. Lenz*, 79 S.W.3d 10, 13 (Tex. 2002) (holding trial court implicitly ruled on motion by virtue of substance of its judgment later rendered); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 448–49 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *cf.* TEX. TAX

14

CODE § 171.252 (providing that "if 'corporate privileges' are forfeited under this subchapter . . . the corporation shall be denied the right to sue or defend in a court of this state"). Accordingly, we hold that error is preserved. *See* TEX. R. APP. P. 33.1.

With respect to the merits of YHR's issue, the record shows that YHR presented evidence at trial that Cleaners's corporate charter was forfeited in 2009. Specifically, the trial court admitted into evidence a copy of a certified statement from the SOS, titled "Forfeiture pursuant to Section 171.309 of the Texas Tax Code of 7-7 Cleaners, Inc[.]" The statement reflects that Cleaners's charter was forfeited on August 7, 2009 and that the SOS made the following findings:

1.    The Secretary has received certification from the [Comptroller] under Section 171.302 of the Texas Tax Code indicating that there are grounds for the forfeiture of the taxable entity's charter, certificate or registration; and

2.    The [Comptroller] has determined that the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited.

Therefore, pursuant to Section 171.309 of the Texas Tax Code, the [SOS] hereby forfeits the charter, certificate or registration of the taxable entity as of the date noted above and records this notice of forfeiture in the permanent files and records of the entity.

YHR argued, and the record shows, that it raised the matter of Cleaners's lack of capacity in its answer in December 2015. And, YHR presented at trial a statement of "Franchise Tax Account Status" from the Comptroller, which the trial court admitted into evidence, reflecting that, as of December 9, 2015, Cleaners's charter

15

remained forfeited at the SOS and that Cleaners's right to transact business in the State of Texas remained "Involuntarily Ended."

Counsel for Cleaners argued that Cleaners's charter was reinstated on December 18, 2015 and was again forfeited on January 27, 2017. However, as YHR argues on appeal, no evidence was presented in support. Argument of counsel does not constitute evidence. *Wheelbarger v. Landing Council of Co–Owners*, 471 S.W.3d 875, 892 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).

Cleaners further argued that it had, in the week before trial (June 18, 2018), filed its outstanding franchise tax statements for years 2016 and 2017 with the Comptroller. It explained that the computer system had not yet updated to reflect that its charter or corporate privileges had been reinstated. The trial court ruled that it would carry the matter with the case, thereby granting Cleaners an opportunity to cure the matter. At the close of trial, the trial court directed Cleaners to provide proof by June 25, 2018 that its corporate privileges had been reinstated.

The record reflects that, on June 25, 2018, Cleaners filed a "Tax Clearance Letter" from the Comptroller to Cleaners, dated June 21, 2018, stating that Cleaners had "met all franchise tax requirements" and was "eligible" for reinstatement. The letter notes, however, that it "must be filed with the Texas Secretary of State" and it directs Cleaners on how to file for reinstatement. The record also contains a copy of Cleaners's "*Application for* Reinstatement and Request to Set Aside Revocation

16

or Forfeiture" to the SOS. (Emphasis added.) There is no evidence in the record, however, that the SOS set aside the forfeiture of Cleaners's corporate charter or that Cleaners's corporate privileges were reinstated. *See* TEX. TAX CODE § 171.313 (providing that SOS "*shall determine whether* each delinquent report has been filed and any delinquent tax, penalty, or interest has been paid" (emphasis added)).

Because the record shows that Cleaners forfeited its charter in 2009, six years before this action was filed in 2015 and nine years before trial in 2018, and does not show that its charter or corporate privileges have been revived, section 171.252 denies Cleaners the right to present a defense. *See* TEX. TAX CODE § 171.252 (providing that if corporate privileges are forfeited under this subchapter "the corporation *shall be denied the right to sue or defend in a court of this state*" (emphasis added)); *Humble Oil & Refining Co. v. Blankenburg*, 235 S.W.2d 891, 894 (Tex. 1951) (holding, under substantively similar predecessor statute, that forfeiture of charter denied corporation right to sue or defend in any court); *Christian v. Venefits, LLC*, No. 05-17-01218-CV, 2018 WL 6187612, at *6 (Tex. App.— Dallas Nov. 27, 2018, no pet.) (mem. op.) ("Because VIPCO had forfeited its corporate privileges, the plain language of the statute denied it the right to defend the suit."); *El T. Mexican Restaurants, Inc.*, 921 S.W.2d at 250 (after forfeiture of both its corporate privileges and charter, corporation lacked capacity); *cf. Rosewood Prop. Co. v. Hardy*, No. 05-94-01227-CV, 1995 WL 479656, at *7 (Tex. App.—

17

Dallas Aug. 10, 1995, no pet.) (mem. op.) ("After Hardy Interests paid its taxes, was reinstated *and offered proof of its reinstatement*, the trial court permitted the trial to commence." (emphasis added)).

Because Cleaners was statutorily precluded from presenting defenses, we hold that the trial court erred in rendering a take-nothing judgment against YHR on its counterclaim for unpaid rent based on Cleaners's defense of prior breach of the lease.

We sustain YHR's second issue.

**Mitigation of Damages**

In its first issue, YHR argues that the trial court erred in rendering a take-nothing judgment against it on its claim for unpaid rent on the ground that it failed to mitigate its damages because any such failure constitutes an affirmative defense that was incumbent upon Cleaners, and not YHR, to plead and prove. YHR asserts that Cleaners neither pleaded nor proved any such failure.

A landlord has a duty to mitigate its damages after a tenant breaches a lease. *See* TEX. PROP. CODE § 91.006(a); *see also Austin Hill Country Realty, Inc. v. Palisades Plaza, Inc.*, 948 S.W.2d 293, 299 (Tex. 1997). Although it is a landlord's duty to mitigate, the tenant has the burden to prove that the landlord failed to mitigate its damages and the amount by which the landlord could have reduced its damages. *Austin Hill Country Realty, Inc.*, 948 S.W.2d at 299. A landlord's failure to use reasonable efforts to mitigate its damages bars the landlord's recovery against the

18

breaching tenant only to the extent that damages reasonably could have been avoided. *Id.* A failure to mitigate in the landlord-tenant context is an affirmative defense that *the tenant* must plead and prove. *Id.* at 300.

Here, the trial court concluded:

There was no evidence presented at trial that [YHR] made commercially reasonable efforts to re-lease the premises in question following the eviction of [Cleaners] from the lease premises in November of 2015.

(Emphasis added.)

Having concluded above that Cleaners was statutorily precluded from presenting any defenses, we conclude that it was likewise precluded from raising the affirmative defense of failure to mitigate. *See Austin Hill Country Realty, Inc.*, 948 S.W.2d at 300. Further, the record does not show that Cleaners's pleaded any such failure to mitigate. *See id.* Thus, the record does not support that Cleaners established that it was entitled to any reduction in damages on this ground.

Insofar as the trial court rendered a take-nothing judgment against YHR based on its failure to mitigate its damages with "commercially reasonable efforts," we hold that the trial court erred. We further conclude that, as discussed, such error probably caused the rendition of an improper judgment because the trial court, despite having concluded that YHR prevailed on its claim for unpaid rent, rendered judgment that it take nothing on its claim. *See* TEX. R. APP. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law

19

unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals."); *Zaidi v. Shah*, 502 S.W.3d 434, 444–45 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

We sustain YHR's first issue.

## Conclusion

The trial court concluded that Cleaners breached the Lease by failing to pay rent in accordance with its terms. Having sustained YHR's first and second issues on appeal, we reverse the portion of the trial court's judgment ordering that YHR take nothing on its claim for unpaid rent. We remand the case to the trial court for further proceedings consistent with this opinion, including the entry of judgment in favor of YHR on its claim for damages based on unpaid rent and fees, the calculation of interest, a determination of its attorney's fees, and a determination of the liability, if any, of Ha.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.

20