**THE LAW OFFICES OF WINDLE TURLEY, P.C., Appellant,**

v.

**Robert L. FRENCH, Individually and on Behalf of the Estate of Velma Rae French, Deceased, Robert R. French, Gwenda Dunn, Linda Gilliland, and Robin French, Appellees.**

No. 2–01–080–CV.

Court of Appeals of Texas, Fort Worth.

June 24, 2004.

Law Office of Windle Turley, P.C., Thomas B. Cowart, Dallas, TX, for Appellant.

Brown, Sawicki & Mitchell, L.L.P., Michael G. Sawicki, Dallas, TX, for Appellee.

PANEL A: CAYCE, C.J.;
DAUPHINOT, J.; and SAM J. DAY, J.
(Retired, Sitting by Assignment)

## OPINION ON REHEARING

JOHN CAYCE, Chief Justice.

### Introduction

After we issued our original opinion in this case, The Law Offices of Windle Turley, P.C. (LOWT) moved for rehearing. We grant the motion for rehearing, withdraw our opinion, dissenting opinion, and judgment of February 6, 2003, and substitute the following.

The primary issue we must decide in this case is whether the trial court properly granted appellees[1] summary judgment on LOWT's petition in intervention to recover attorney's fees under several contingent fee agreements. Because we conclude that there are genuine issues of material fact on each of the Frenches' grounds for summary judgment, we will affirm the summary judgment in part and reverse and remand in part. We will also modify the trial court's judgment on damages in part and affirm as modified.

### Background

Beginning in December 1995, all of the appellees except Gwenda Dunn signed contingent fee agreements in which they retained LOWT to represent them in a medical malpractice suit. LOWT attorney Michael G. Sawicki filed the medical malpractice suit on the Frenches' behalf on September 5, 1997 and served as LOWT's lead counsel for that suit. In February 2000, Sawicki, who was apparently the sole remaining attorney in LOWT's medical malpractice section, left LOWT to start his own law firm. By that time, LOWT had incurred $32,585.48 in out-of-pocket expenses prosecuting the Frenches' claims. John Kirtley took over the case on LOWT's behalf. Shortly thereafter, Robert L. French instructed Kirtley not to perform any more work on the case until Mr. French could speak with LOWT's president, Windle Turley.

Turley assured Mr. French that LOWT was "perfectly capable" of handling the Frenches' case and stood ready and willing to do so. Turley himself had litigated and tried to verdict numerous personal injury cases, including medical malpractice

1. Appellees are Robert L. French, individually and on behalf of the estate of Velma Rae French, deceased, Robert R. French, Gwenda Dunn, Linda Gilliland, and Robin French (the Frenches).

cases.[2] Turley regarded Kirtley, who was board certified in personal injury law, as an experienced trial attorney. In addition, Turley promised that Kirtley's handling of the Frenches' case would be under Turley's close supervision and oversight.

Despite Turley's assurances, on April 20, 2000, Mr. French asked for the case files and informed LOWT that he was going to hire Sawicki to try the case. Mr. French explained that he was taking this action because, without Sawicki, LOWT did not have anyone well-versed in trying medical malpractice cases. In particular, Mr. French expressed his concern over Kirtley's lack of medical malpractice experience. Mr. French also reminded LOWT that the case had previously been delayed when the Frenches lost their first attorney (before LOWT) and expressed concern over further delay that could be caused if Sawicki was not allowed to continue handling the case. In addition, Mr. French offered to reimburse LOWT for its out-of-pocket expenditures in the event the Frenches prevailed on their medical malpractice claims and urged Turley to work out a joint venture fee agreement with Sawicki, despite having been told of Turley's statement that "that would never happen."

On April 28, 2000, LOWT filed a notice of assignment of attorney's fees, asserting that the Frenches had terminated the contingent fee agreements without good cause and that LOWT was therefore entitled to recover the full contingent fee and its expenses under the agreements. On May 10, 2000, LOWT filed an agreed motion to withdraw, substituting Sawicki and his new firm as lead counsel for the Frenches. Also on May 10, LOWT filed a first supplemental motion to withdraw, averring that the withdrawal was not voluntary and that the Frenches had unilaterally terminated LOWT's representation. The motion further stated: "Although [LOWT is] willing to continue its representation of the Plaintiffs, in compliance with the wishes of Mr. French, on behalf of all Plaintiffs, Plaintiffs' counsel request that [LOWT] be allowed to withdraw as attorneys of record and substitute Mr. Michael G. Sawicki ... as lead counsel for Plaintiffs." The trial court granted LOWT's first supplemental motion to withdraw on May 11.

In July 2000, LOWT filed a petition in intervention in the Frenches' medical malpractice suit, seeking the full fee under the contingent fee agreements. The Frenches moved to strike the petition in intervention. Also, at some point, Mr. French filed a grievance with the State Bar of Texas, asserting that LOWT was not entitled to its full contingent fee based on the circumstances of the case. The grievance was dismissed, and the dismissal was affirmed in August 2000 by the Texas Board of Disciplinary Appeals.

Thereafter, in September 2000, the Frenches asked LOWT to agree to submit the parties' fee dispute to the Texas Bar Association Fee Dispute Committee for resolution. The Frenches also authorized Sawicki to reiterate their previous offer to reimburse LOWT for expenses and to share attorney's fees. In October and November 2000, the Frenches asked LOWT to take the case back and sent their case files back to LOWT's offices. LOWT refused to take the case back and returned the Frenches' case files to Sawicki's office.

In early November 2000, Sawicki filed a motion to withdraw and to substitute LOWT as the Frenches' counsel. LOWT

2. Turley was board certified in personal injury law and had practiced that specialty for over thirty-five years.

did not oppose Sawicki's withdrawal, but refused to be substituted as counsel. In its response to Sawicki's motion to withdraw, LOWT stated:

Prior to the French family, without good cause, terminating our contract, we made every reasonable attempt, and extended our hand of assistance, at providing the French family the opportunity to allow our firm to continue to represent them in the above cause, and were prepared to do so, until their termination of our firm. Beyond termination, reconciliation of the attorney-client relationship, and our continued representation of Plaintiffs, might have been possible.

However, due to the fact that Mr. French has filed a grievance against our firm, the amount of time that has passed since our being terminated and our concern as to whether Mr. Sawicki has been diligently pursuing the French family's claims, we believe that the attorney-client relationship, between our firm and the French family, would not be feasible because of discord or conflict of personalities that destroys the legitimate ends of the attorney-client relationship and prevents any reasonable expectation of reconciliation or continued representation.... We should not be made to assume any risks, if any, in Mr. Sawicki's intervening handling of this file after it left our firm.

.... We do not, now, intend to represent the French family, and we believe they should seek other legal counsel.

. . . .

It is preposterous for Mr. Sawicki to plead that our pursuit of our legally assigned interest in the case "has the effect of making it impossible for the Frenches to find other counsel" when

they are clearly represented by Mr. Sawicki. It may be that Mr. Sawicki, charged with the knowledge of the law regarding contingency fee contracts, assumed any risk in, in any way, inducing the French family to terminate our firm and hire Mr. Sawicki....

. . . .

Our position is not to be construed as a waiver of any rights we have under our contract with the French family, those rights having been asserted in our intervention herein....

The trial court set Sawicki's motion to withdraw for hearing on December 18, 2000. On that date, the trial court entered an order granting the Frenches' motion to strike and dismissed LOWT's petition in intervention.[3] In January 2001, the Frenches obtained a favorable jury verdict in their medical malpractice suit, and LOWT refiled its petition in intervention on January 18, 2001. On January 19, the trial court rendered judgment on the jury's medical malpractice verdict, awarding the Frenches a total of $550,212.32 in damages and prejudgment interest and $4,534.80 in costs.

On February 6, 2001, LOWT filed a motion for summary judgment on its petition in intervention. The Frenches also moved for summary judgment, on February 13, 2001. On February 15, LOWT filed its response to the Frenches' motion for summary judgment.

At a hearing on February 15, the trial court orally granted the Frenches' summary judgment motion. On February 28, 2001, the trial court rendered judgment granting the Frenches' motion for summary judgment and denying LOWT's motion. This appeal followed.

**3.** The trial court also wrote "denied M.W.D." on its docket, but did not enter an order on the motion to withdraw.

## Issues Presented

LOWT argues in its first issue that summary judgment for the Frenches is improper because none of the Frenches' legal theories support the judgment. The Frenches moved for summary judgment on five grounds: 1) LOWT abandoned its contingent fee agreements with the Frenches; 2) LOWT's attempt to recover its contingent fee is unconscionable; 3) the contingent fee agreements violate public policy; 4) the Frenches had good cause to terminate the contract with LOWT; and 5) LOWT had no contract with Gwenda Dunn. The summary judgment does not state the ground on which the trial court granted judgment; therefore, we must affirm the summary judgment if any of the Frenches' theories are meritorious.[4]

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[5] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.[6] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[7] In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded, and the evidence favorable to the non-movant is accepted as true.[8] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[9]

## Abandonment of Contract

 LOWT argues that the trial court erred if it granted the Frenches' motion for summary judgment based on the theory that LOWT abandoned its contract with the Frenches. For the acts of a party to a contract to constitute abandonment, the acts must be positive, unequivocal, and inconsistent with the existence of the contract.[10]

LOWT's response to the Frenches' summary judgment motion included the affidavit of Windle Turley. Turley stated in his affidavit that, following Sawicki's departure from the LOWT law firm, he advised Mr. French that LOWT was continuing to prosecute the Frenches' claims. Turley also averred in his affidavit that, before the Frenches terminated their contract, he assured Mr. French that LOWT was ready, willing, and able to take care of the case.

Disregarding the conflicting evidence and accepting Turley's statement as true, we hold that the record does not reflect that the Frenches have conclusively proven all the elements of their abandonment defense. Accordingly, we sustain LOWT's

---

4. *Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex. 1995).

5. Tex.R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

6. *Southwestern Elec. Power Co.,* 73 S.W.3d at 215; *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Great Am. Reserve Ins.* *Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

7. *Great Am.,* 391 S.W.2d at 47.

8. *Rhone–Poulenc,* 997 S.W.2d at 223; *Harwell,* 896 S.W.2d at 173.

9. *Great Am.,* 391 S.W.2d at 47.

10. *Campbell v. Hart,* 256 S.W.2d 255, 260–61 (Tex.Civ.App.-Fort Worth 1953, writ ref'd n.r.e.).

subissue to the extent that the trial court relied on a theory of abandonment in granting the summary judgment.

## Unconscionable Attempt to Collect Fee

■ LOWT further argues that the trial court erred in granting the Frenches' motion for summary judgment if the court relied upon the Frenches' theory that LOWT's contingent fee or its attempt to collect its full 45% contingent fee was unconscionable and violated the Texas Disciplinary Rules of Professional Conduct.

A lawyer shall not enter into an arrangement for or charge an unconscionable fee, which is a fee that a competent lawyer could not reasonably believe is reasonable.[11] Several factors are considered in determining the reasonableness of a fee, including but not limited to the time and effort required, the difficulty of the case, the skill of the attorney, and the customary fee charged in the legal community for a similar case.[12]

■ There is no contention in the Frenches' motion for summary judgment that a 45% contingent fee agreement in a medical malpractice case is itself unconscionable. Instead, the Frenches argue that LOWT's "attempt to collect" its full 45% contingent fee, "when [LOWT] refused to perform under the contract and did not participate in the trial of the case, is unconscionable and constitutes a breach of the fiduciary duty created by the Texas Disciplinary Rules of Professional Con-

duct."[13] To support this argument, the Frenches rely on James M. McCormack's sworn affidavit in which he avers that, based on his experience, LOWT's "contract claims for a full 45% contingent fee in a case in which [LOWT] is no longer counsel, rendered only preliminary legal services, and can claim no participation in either the preparation of the case for trial or the trial of the case itself—indeed, even refused to represent the French[es] in trial—constitute an unconscionable legal fee." Controverting McCormack's statement, Turley stated in his affidavit that based upon his experience, the contract fee was not only usual and customary, but was also reasonable and necessary for medical malpractice cases in Texas.[14]

Disregarding the Frenches' evidence and accepting Turley's statements as true, we hold that the Frenches did not conclusively meet their burden of proof regarding the alleged unreasonableness of LOWT's contingent fee or LOWT's claim for the full 45% contingent fee. We sustain LOWT's subissue to the extent that the trial court granted summary judgment based on a determination that LOWT's contingent fee or its attempt to collect the fee is unconscionable.

## Public Policy

LOWT also argues that the trial court erred in granting the Frenches' motion for summary judgment if the court relied on the Frenches' argument that the contin-

11. Tex. Disciplinary R. Prof'l Conduct 1.04(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9).

12. Tex. Disciplinary R. Prof'l Conduct 1.04(b).

13. The Frenches cite no legal authority, and we are aware of none, for the proposition that an attempt to collect a fee may be deemed unconscionable or a breach of fiduciary duty,

and thus a defense to payment, under facts such as those in this case.

14. Further, LOWT points out the Texas law allows attorneys to collect their full contingent fee when the client terminates the contract without good cause. *See Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969). As we discuss herein, there is a fact issue concerning whether the Frenches terminated the fee agreements without cause.

gent fee violates public policy. Relying on Rule 1.15 of the Texas Disciplinary Rules of Professional Conduct, the Frenches argue that inherent in a client's absolute right to discharge his or her attorney is the client's absolute right to be discharged from all contractual obligations with the attorney.[15] The Frenches contend that if clients are held liable to discharged attorneys for contingent fees, they are effectively prevented from exercising their right to discharge their attorneys at will, in contravention of public policy.

In *Mandell & Wright v. Thomas*, the Supreme Court of Texas declared that "when the client, without good cause, discharges an attorney before he has completed his work, the attorney may recover on the contract for the amount of his compensation."[16] We are bound by this decision and sustain LOWT's subissue to the extent the trial court granted summary judgment based on a determination that LOWT's contingent fee agreement violated public policy.

### Good Cause

LOWT next contends that the trial court erred if its judgment was based on a finding that the Frenches had good cause to terminate the contract.[17] Whether a client had good cause for discharging an attorney with whom he contracted to provide legal services is a fact issue for the jury to decide.[18]

The Frenches contend that they had good cause to terminate the contingent fee

agreements because after Sawicki left LOWT they did not believe LOWT and Kirtley had sufficient experience in handling medical negligence cases, nor did they want their case further delayed by the substitution of lead counsel. Turley stated in his affidavit that he and Kirtley were Board Certified in Personal Injury Trial Law by the Texas Board of Legal Specialization. Turley also averred that he told Mr. French that Kirtley would be under Turley's supervision and that Turley had litigated and tried medical malpractice cases to verdict. Finally, Turley averred that LOWT was ready, willing, and able to handle the case without delay.

Disregarding all conflicts in the evidence and accepting LOWT's evidence as true, we hold that the Frenches have not conclusively proven that they had good cause to terminate the contract with LOWT.[19] We sustain this subissue to the extent the court relied on the good cause ground in granting summary judgment.

### Gwenda Dunn

In addition, LOWT argues that the trial court erred in granting the Frenches' no-evidence portion of their motion for summary judgment on the ground that LOWT had no contract with Gwenda Dunn because doing so would have granted more relief than the Frenches requested.

The Frenches' motion for summary judgment specifically limited the no-evidence argument to Dunn. LOWT conceded that it had no contract with Dunn, and it does not contest the validity of the judg-

---

**15.** *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.15 cmt. 4.

**16.** 441 S.W.2d at 847.

**17.** *See id.*

**18.** *See Howell v. Kelly*, 534 S.W.2d 737, 739–40 (Tex. Civ. App.-Houston [1st Dist.] 1976, no writ); *see also Staples v. McKnight*, 763

S.W.2d 914, 916 & n. 1 (Tex.App.-Dallas 1988, writ denied) (holding that whether attorney had just cause to withdraw from representing client depends on facts and circumstances of case).

**19.** *See Rhone–Poulenc*, 997 S.W.2d at 223; *Clear Creek Basin*, 589 S.W.2d at 678.

ment as to Dunn in this appeal. If, however, the trial court granted the Frenches' motion for summary judgment as to all of the Frenches based on the fact that there was no evidence of a contract with Dunn, it would have done so in error. We sustain this subissue of LOWT's first issue.[20]

### Modification of Judgment to Conform to Jury's Findings

■ Finally, LOWT argues that the damage award in the underlying suit should be modified because the judgment did not conform to the jury's findings. The trial court's judgment in the medical malpractice case and its final judgment rendered after ruling on the petition in intervention awarded the damages caused by Dr. Michael W. Dotti to all of the Frenches. Conversely, the jury determined that Robert L. French should be compensated $400,000 for his past and future damages and that the estate of Velma Rae French should be compensated $27,000 for medical, funeral, and burial expenses. The jury specifically found in its verdict that no sum of money should be awarded to Robin French, Gwenda Dunn, Linda Gilliland, or Robert R. French.

We address the trial court's damages award in the underlying judgment because LOWT timely intervened before the trial court rendered judgment against Dr. Dot-

ti[21] and because the resulting judgment affects LOWT's interest, if any, in its contracts with the Frenches.[22] The parties agree that LOWT did not have a contract with Dunn; accordingly, there is no question that damages awarded to Dunn would not be subject to LOWT's contractual claims. Therefore, if the trial court's award of damages to all the Frenches was in error and Mr. French should have been the only plaintiff compensated for his damages, then LOWT's contractual rights have been adversely affected.

■ A judgment must "conform to the pleadings, the nature of the case proved and the verdict."[23] When the trial court modifies a judgment, enters a judgment non obstante veredicto, or disregards the jury's verdict, the trial court must act pursuant to a motion and must provide notice and a hearing.[24] If the record does not reflect the motion, notice, and hearing, "a judgment disregarding the verdict or specific findings under Rule 301 will be reversed."[25]

The record does not reflect a motion to modify or to disregard the jury's findings, and the trial court cannot disregard the jury's findings and enter a different judgment on its own initiative.[26] Accordingly, the trial court erred in awarding any damages to Dunn, Gilliland, Robin French, and

**20.** Having concluded that none of the grounds alleged by the Frenches in their motion for summary judgment support summary judgment, we do not reach LOWT's complaints under its first issue regarding the lack of notice of the summary judgment hearing and the alleged defects in the Frenches' summary judgment evidence, including the affidavit of James McCormack. For the same reason, we also do not address LOWT's second and third issues regarding attorney's fees. *See* Tex.R.App. P. 47.1.

**21.** *See First Alief Bank v. White,* 682 S.W.2d 251, 252 (Tex.1984); *Comal County Rural*

*High Sch. Dist. No. 705 v. Nelson,* 158 Tex. 564, 314 S.W.2d 956, 957 (1958).

**22.** *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993).

**23.** Tex.R. Civ. P. 301.

**24.** *Lamb v. Franklin,* 976 S.W.2d 339, 343 (Tex.App.-Amarillo 1998, no pet.).

**25.** *Id.; see* Tex.R. Civ. P. 301.

**26.** *Lamb,* 976 S.W.2d at 343.

Robert R. French. We sustain LOWT's final issue.

Having sustained LOWT's complaints regarding the granting of the Frenches' motion for summary judgment and the damages award based on the jury's verdict, we reverse the trial court's summary judgment for appellees except as to the no-evidence summary judgment for Gwenda Dunn. In order to conform the damages award in the judgment to the jury's verdict, we also modify the trial court's final judgment to state:

> **It is further ordered, adjudged, and decreed** that all sums awarded to Plaintiffs against Defendants are hereby awarded in their entirety to Plaintiff Robert L. French, Individually and on Behalf of the Estate of Velma Rae French, Deceased.

> **It is further ordered, adjudged, and decreed** that Robin French, Gwenda Dunn, Linda Gilliland, and Robert R. French be awarded $0 on their claims against Michael W. Dotti, M.D.

We affirm the summary judgment for Dunn and the damages award in the final judgment as modified. We remand the contingent attorney's fees issue between LOWT and Robert L. French, individually and on behalf of the estate of Velma Rae French, deceased for trial on the merits.