

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00157-CV

SUPER VENTURES, INC. AND ABU                    APPELLANTS
TUARB TARIQ

V.

SAIQA S. CHAUDHRY                               APPELLEE

----------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY
TRIAL COURT NO. C2012437

----------

## OPINION

----------

Appellants Super Ventures, Inc. and Abu Tuarb Tariq appeal from the trial court's judgment against them jointly and severally and in favor of Appellant Saiqa S. Chaudhry. In what we construe as four issues, Super Ventures and Tariq argue that the evidence is legally and factually insufficient to support the judgment. We affirm.

## I. Background

Tariq is the president of Super Ventures, which owned "J-Mart," a convenience store and gas station located at 4505 Highway 377 East, Granbury, Texas. In December 2007, Super Ventures, acting by and through Tariq, entered into a written lease agreement whereby Super Ventures leased to Chaudhry "[t]hat certain property located at 4505 Highway 377 East, Granbury, Texas 76049 . . . together with all furniture, fixtures[,] and equipment located thereon" (the property). The lease term ended on December 11, 2012. The base rent was $12,300 per month from December 12, 2007, though June 30, 2008, and starting July 1, 2008, increased to $13,300 per month for the remainder of the term. At the time, the property was encumbered by a deed of trust securing a note payable by Super Ventures to Zions First National Bank in the original principal amount of $930,000.

In March 2008, Chaudhry executed a promissory note in the original principal amount of $30,000 payable to Super Ventures. The note was payable in fourteen monthly installments of $1,000 due on the first day of the month beginning April 1, 2008. These payments were in addition to the rental payments. The remaining principal, together with all accrued but unpaid interest, was due on or before June 1, 2009.

On August 26, 2009, Chaudhry and Super Ventures executed a first amendment to the lease agreement (the lease amendment), which gave Chaudhry the option to purchase the property for $1,270,000. The option expired

2

on July 31, 2011, and could only be exercised upon the payment of a $180,000 option fee, $30,000 of which was due on or before October 31, 2009; the remaining $150,000 was payable in twenty-four monthly installments of $6,250 due on the first of the month beginning September 1, 2009. The option fee was in addition to rent and other amounts due under the lease, was nonrefundable, and was to be applied to the purchase price as a down payment at closing. Super Ventures agreed to provide financing for the remaining $1,090,000 purchase price for two years at nine percent interest, with monthly installments of $13,300. The financing was to be secured by a lien on the property. The remaining balance was due at the end of two years, and Super Ventures had no obligation to renew or to extend financing.

The lease amendment further provided that once the option fee was paid in full, Chaudhry could exercise the option by giving Super Ventures written notice that she was exercising the option. Chaudhry and Super Ventures were then to arrange a mutually acceptable closing date to occur within thirty days of Chaudhry exercising the option. At closing, Super Ventures was to deliver a special warranty deed conveying the property to Chaudhry "free and clear of all liens." The parties also agreed to execute and deliver any other written documentation reasonably required to close on the sale of the property, including but not limited to, Chaudhry's execution of a promissory note and deed of trust evidencing financing by the seller.

3

Over time, disputes arose between the parties over the amounts paid and the amounts due on the lease, the promissory note, and the option fee. In a letter dated June 16, 2011, Super Ventures informed Chaudhry that it had deposited $160,543.78 towards the option and that $19,456.22 remained due in order to invoke the option to purchase the property. On July 29, 2011, Chaudhry sent to Super Ventures a letter stating that she was exercising her option to purchase the property. She also enclosed a $30,456.87 check payable to Super Ventures. The check was intended to pay the remainder of the option fee plus some of the other money Chaudhry owed Super Ventures. On August 16, 2011, Super Ventures notified Chaudhry by letter that it applied the check towards the outstanding option fee balance,[1] and it deposited the check on August 25, 2011.

The parties attempted to negotiate the terms of the sale of the property and to resolve the amounts due under the lease and the promissory note, but they never closed on the sale of the property. The lease term ended on December 11, 2012, and Chaudhry vacated the property. Zions First National Bank foreclosed on the property in November 2013.

Chaudhry filed suit against Super Ventures and Tariq, alleging that Super Ventures breached and abandoned the lease amendment by failing and refusing to close on the sale of the property. She further claimed that the option to

---

[1]According to the August 16, 2011 letter, Super Ventures and Tariq claimed that the outstanding balance on the option was $21,829.18 before the application of the check.

4

purchase the property was void and unenforceable under the statute of frauds because the legal description of the property in the lease amendment was insufficient as a matter of law. She also asserted claims against Super Ventures and Tariq for fraud in the inducement and for violations of the Texas Deceptive Trade Practices Act (DTPA) based on Tariq's alleged failure to disclose two tax liens, a judgment lien, and deeds of trust executed in favor of Bank United, Zions First National Bank, and JP Morgan Chase Bank that had been filed against the property. Chaudhry claimed that Super Ventures and Tariq were jointly and severally liable and sought rescission of the lease amendment, return of the $180,000 option fee, and attorney's fees.

In their answer, Super Ventures and Tariq alleged, among other things, that Tariq was not liable to Chaudhry in the capacity in which he was sued and that the DTPA did not apply to Chaudhry's claims. Super Ventures and Tariq also counterclaimed, alleging, among other things, that Chaudhry breached the lease, the promissory note, and the lease amendment by failing to pay the sums due thereunder; that she breached the lease amendment by failing to close on the property; and that she breached the lease and the lease amendment by failing to maintain the property in good condition, by failing to continue to operate and keep the business open to the public, and by failing to return the furniture, fixtures, equipment, and the property to Super Ventures in the same condition as she received them.

After a bench trial, the trial court found that judgment should be rendered for Chaudhry on all of her causes of action. The trial court entered judgment in favor of Chaudhry and against Super Ventures and Tariq, jointly and severally, for $180,000, plus $22,500 in prejudgment interest, and ordered that Super Ventures and Tariq's counterclaims be denied. The trial court also entered judgment in favor of Chaudhry and against Super Ventures and Tariq, jointly and severally, for $16,000 in trial attorney's fees, a total of $17,500 in conditional appellate attorney's fees, and costs. The trial court filed findings of fact and conclusions of law. Super Ventures and Tariq appealed.

## II. Standards of Review

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence. *Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003); *Allison v. Conglomerate Gas II, L.P.*, No. 02-13-00205-CV, 2015 WL 5106448, at *6 (Tex. App.—Fort Worth Aug. 31, 2015, no pet.) (mem. op.). We defer to unchallenged findings of fact that are

6

supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*,

395 S.W.2d 821, 823 (Tex. 1965). An opinion reversing for factual insufficiency must detail the evidence relevant to the issue or point in consideration and clearly state why the finding is factually insufficient (in other words, why the evidence supporting the finding is so weak or is so against the great weight and preponderance of the evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias). *Pool*, 715 S.W.2d at 635.

We review the trial court's legal conclusions de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software*, 83 S.W.3d at 794); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.). That is, because a trial court's conclusions of law are not binding on us, we will not reverse a trial court's judgment based on an incorrect conclusion of law when the controlling findings of fact support the judgment on a correct legal theory. *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 679 (Tex. App.—Fort Worth 2015, no pet.).

### III. Super Ventures's Capacity

In the first part of what we construe as the third issue, Super Ventures argues that the trial court erred by concluding that it did not have the capacity to

8

assert its counterclaims or to defend against Chaudhry's claims.[2]   Super

Ventures contends the evidence was insufficient to support conclusion of law

number eight, which was as follows:

> 8.  Super Ventures, Inc. does not have the capacity to defend or to bring this Counterclaim pursuant to Section 171.25[2] of the Texas Tax Code, which denies the right of a corporation to sue or defend in court in the State of Texas if corporate privileges were forfeited.

Super Ventures argues that the evidence was insufficient to support this

conclusion because "[t]he evidence and testimony produced at trial conclusively

showed that . . . Super Ventures had reinstated its corporate existence as of the

trial date."   Under the tax code, a corporation without corporate privileges is

"denied the right to sue or defend in a court of this state."   *See* Tex. Tax Code

Ann. § 171.252(1) (West 2015).  Despite this clear language, courts of this state

have concluded that this provision does not prevent a corporation that has

forfeited its corporate privileges from defending claims against it.   *See, e.g.*,

*Cruse v. O'Quinn*, 273 S.W.3d 766, 770 (Tex. App.—Houston [14th Dist.] 2008,

pet. denied) (holding law firm's forfeiture of corporate charter did not strip it of its

right to appeal, in spite of provisions in section 171.252); *Mello v. A.M.F. Inc.*, 7

S.W.3d 329, 331 (Tex. App.—Beaumont 1999, pet. denied) (stating that, despite

clear language of section 171.252, "the statute has historically been limited to

---

[2]Although Super Ventures and Tariq have filed a joint brief, we construe the first part of the third issue, which challenges Super Ventures's capacity to sue and to be sued, as pertaining only to Super Ventures.  We construe the latter part of the third issue, which challenges Tariq's individual liability and is addressed later in the opinion, as pertaining only to Tariq.

prohibit defendants from bringing cross actions, not from merely defending lawsuits"). And, as this court has explained, federal and state courts have long interpreted section 171.252 to preclude entities only from filing suit after forfeiting their right to do business, not to prohibit them from continuing an action filed before their privileges had been forfeited. *See, e.g.,* *1 Lincoln Fin. Co. v. Am. Family Life Assur. Co. of Columbus*, No. 02-12-00516-CV, 2014 WL 4938001, at *3 (Tex. App.—Fort Worth Oct. 2, 2014, no pet.) (mem. op.); *Waterway Ranch, LLC v. City of Annetta*, 411 S.W.3d 667, 673 (Tex. App.—Fort Worth 2013, no pet.) (citing *Tex. Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403–04 (5th Cir. 2008)); *Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *5–6 (Tex. App.—Austin May 27, 2010, pet. denied) (mem. op.).

Evidence adduced at trial showed that Super Ventures's right to transact business was forfeited on December 4, 2009, for failure to satisfy franchise tax requirements. On April 9, 2010, the Texas Secretary of State forfeited Super Ventures's registration. Super Ventures's registration was reinstated on August 18, 2011. Chaudhry filed this suit in December 2012. Super Ventures's right to transact business was forfeited again in March 2013 for failure to satisfy franchise tax requirements. On August 2, 2013, its registration was forfeited. The case was tried on March 28, 2014.

At trial, Tariq testified that Super Ventures applied for reinstatement, and a letter dated March 13, 2014, from the comptroller's office stating that Super Ventures had "met all franchise tax requirements and is eligible for reinstatement

10

through May 15, 2015," was admitted into evidence. When Tariq was asked whether Super Ventures's corporate charter had been reinstated, he responded that it had. Chaudhry immediately objected, and the trial court sustained the objection. Super Ventures does not complain on appeal about the trial court's evidentiary ruling.

Under the cases cited above, however, it is irrelevant whether Super Ventures's right to transact business was reinstated as of the time of trial. Either way, Super Ventures had the capacity to defend claims against it. Thus, the trial court erred by concluding that Super Ventures lacked capacity to defend claims against it.[3]

We need not address the trial court's conclusion that Super Ventures did not have capacity to bring its counterclaims as it is unnecessary for the disposition of this appeal because Super Ventures does not seek relief from the trial court's judgment that Super Ventures take nothing on its counterclaims. *See*

---

[3]In a supplemental brief filed upon leave of this court before submission, Super Ventures and Tariq assert that the trial court erred in reaching the conclusion that Super Ventures did not have the capacity to defend Chaudhry's suit because she failed to properly plead the issue of Super Ventures's lack of capacity to defend the lawsuit by filing a verified pleading. *See* Tex. R. Civ. P. 93(1) (requiring that a pleading asserting that a defendant does not have the legal capacity to be sued be verified). Super Ventures and Tariq argue that, therefore, Chaudhry was precluded from claiming at trial that Super Ventures lacked capacity to defend against her lawsuit. But because we have determined that the trial court erred by concluding that Super Ventures did not have the capacity to defend against Chaudhry's lawsuit, we need not address this argument. *See* Tex. R. App. P. 47.1.

11

Tex. R. App. P 47.1. Accordingly, we sustain the third issue as it relates to Super Ventures's capacity to defend against Chaudhry's claims.

## IV. Breach of Contract

In what we construe as their first issue, Super Ventures and Tariq argue that the evidence was legally and factually insufficient to support the trial court's judgment against them on Chaudhry's breach of contract claim. They contend the evidence was insufficient to support findings of fact one, two, twelve, fifteen and twenty-three, and conclusion of law one, which were as follows:

1. On August 29, 2009, Super Ventures, Inc. by and through its President, Abu Tuarb Tariq, entered into a First Amendment to Lease Agreement with Saiqa S. Chaudhry, granting her an option to purchase premises "commonly known as 4505 Hwy 377E Granbury, Texas 76049" ("Property") for $1,270,000.00. The option fee of $180,000.00 was to be applied to the purchase price as a down payment. The Seller, in the Amendment, agreed to finance the balance for two (2) years at nine percent (9%) interest per annum and monthly installments of $13,300.00. The Property was to be conveyed free and clear of all liens.

2. Saiqa S. Chaudhry, relying on the terms of the First Amendment to Lease Agreement, executed same, and on July 29, 2011 exercised the option and paid the balance due on the $180,000.00 fee/down payment.

. . . .

12. Neither Super Ventures, Inc., nor Abu Tuarb Tariq had the ability to pay the balance due on the first lien on the Property or convey the Property free and clear of all liens in August 2009 or August 2011.

. . . .

15. Super Ventures, Inc., and Abu Tuarb Tariq abandoned the contractual obligations set forth in the First Amendment to Lease Agreement.

. . . .

23. Reasonable attorney's fees through trial are $16,000.00; in the event of an appeal to the Court of Appeals $10,000.00; if a Petition [for] Review is filed before the Supreme Court $7,500.00.

. . .

1. Super Ventures, Inc., and Abu Tuarb Tariq, abandoned the contract contained in the First Amendment to Lease Agreement and Saiqa S. Chaudhry is allowed rescission and a return of all monies paid as a result of said abandonment; said conduct also constitutes a breach of contract.

Super Ventures and Tariq only challenge the portions of the findings and conclusions dealing with breach and abandonment of the lease amendment. They argue that they did not breach the lease amendment because neither of them—particularly Tariq because he was a stranger to the lease amendment—was required to convey the property free and clear of all liens until closing on the sale of the property. Because Super Ventures and Chaudhry never closed on the sale of the property, they contend they were not obligated to covey the property free and clear of all liens. They assert that after Chaudhry paid the option fee in full, Super Ventures "worked exhaustively to move the transaction forward" and by assisting Chaudhry in finding third-party financing, even though it was not required to do so. For these reasons, Super Ventures and Tariq contend that they did not breach or abandon the lease amendment. They counter that Chaudhry breached and abandoned the lease amendment by not purchasing the

13

property, by not scheduling the closing, by failing to make the final option payment timely, and by failing to maintain the property.

"A breach [of contract] occurs when a party fails or refuses to do something he has promised to do." *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). While Super Ventures and Tariq do not complain that the trial court erred by granting rescission of the lease amendment as a remedy for their breach, the question of whether Super Ventures and Tariq abandoned the lease amendment was relevant to the trial court's decision to award rescission because "[a] partial breach can be sufficient to grant rescission in only two instances: 1) if it affects a material part of the agreement going to the essence of the contract, or 2) it clearly evidences an intention by the party in default to rescind or abandon the agreement." *Benavides v. Benavides*, No. 04-12-00864-CV, 2014 WL 235281, at *2 (Tex. App.—San Antonio Jan. 22, 2014, pet. denied) (mem. op.) (quoting *In re Marriage of Smith*, 115 S.W.3d 126, 134 (Tex. App.—Texarkana 2003, pet. denied)); *see Atkins v. Beasley*, 544 S.W.2d 505, 507 (Tex. Civ. App.—Waco 1976, no writ). For the acts of a party to constitute abandonment, the acts must be positive, unequivocal, and inconsistent with the existence of a contract. *Law Offices of Windle Turley, P.C. v. French*, 140 S.W.3d 407, 411 (Tex. App.—Fort Worth 2004, no pet.) (op. on reh'g) (citing *Campbell v. Hart*, 256 S.W.2d 255, 260–61 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e.)).

14

## A. Super Ventures's Breach

The trial court's findings regarding the terms of the lease amendment are consistent with the terms of the lease amendment admitted into evidence at trial. Evidence adduced at trial showed that on July 29, 2011, Chaudhry sent to Super Ventures a letter stating that she was exercising her option to purchase the property and enclosed a check payable to Super Ventures that was intended to pay the balance owed on the option fee. On August 16, 2011, Super Ventures notified Chaudhry by letter that it had applied the check towards the outstanding option fee balance, and it deposited the check on August 25, 2011. Even though Super Ventures did not deposit the option fee check until August 25, 2011, the evidence was sufficient to support the trial court's finding that Chaudhry exercised the option on July 29, 2011.

The lease amendment provided that the closing date for the sale of the property was to occur within thirty days of the option, but no closing occurred. Over the next several months, the parties attempted to resolve the amounts due under the lease and the promissory note. In a letter dated November 18, 2011, Super Ventures sent Chaudhry a letter stating that it was agreeable to move forward with the sale of the property and temporarily put aside the issue of the amounts owed on the promissory note,[4] enclosing a proposed contract for sale

---

[4]Tariq admitted at trial that the promissory note was separate from the lease amendment and that payment on the promissory note did not affect Chaudhry's ability to exercise the option in the lease amendment.

that required the remaining $1,090,000 purchase price to be paid in "cash, cashier's check[,] or other immediately available funds at closing."

On March 16, 2012, Super Ventures sent Chaudhry another proposed contract for sale, which required Chaudhry to sign a two-year, second lien wrap note in the amount of $1,090,000. Tariq testified that Super Ventures offered Chaudhry owner financing in the form of a second lien wrap and that he told her that Super Ventures was not able to provide financing for longer than two years. Tariq also testified that he had also offered to help Chaudhry find third-party financing. He admitted, however, that in August 2011, Super Ventures was unable to execute a warranty deed, i.e. transfer the property, free and clear of all liens because it did not have enough money to pay off the first lien and the State of Texas.[5]

Both of the proposed sales contracts were inconsistent with Super Ventures's obligations under the lease amendment. The first proposed contract did not provide for owner financing; the second proposed contract provided for owner financing, but it would not have enabled Super Ventures to convey the property to Chaudhry free and clear of all liens because the first lien on the property would have remained in place. This, coupled with the fact that in August 2011, Super Ventures lacked the money to satisfy the liens encumbering the property, supports the trial court's findings and conclusion that Super Ventures

_____

[5]As discussed later in the opinion, the property was encumbered by significant state tax liens at that time.

16

breached and abandoned the lease amendment because the evidence showed that Super Ventures failed or refused to go through with the sale of the property in accordance with the terms of the lease amendment.

## B. Chaudhry's Breach

Super Ventures and Tariq also complain that Chaudhry breached and abandoned the lease amendment by not purchasing the property, by not scheduling the closing, and by failing to maintain the property, which Super Ventures claims resulted in over $250,000 in damages.  With the exception of its finding that Chaudhry timely exercised the option, the trial court made no express findings related to the issue of Chaudhry's breach or abandonment of the lease.  It is presumed that all fact findings needed to support the judgment were made by the trial court.  *See* Tex. R. Civ. P. 299; *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 276 (Tex. 1979).  After the trial court files its original findings of fact and conclusions of law, any party may file a request for specified additional or amended findings or conclusions with the clerk of the court.  Tex. R. Civ. P. 298.  The failure of a party to request additional or amended findings or conclusions waives the party's right to complain on appeal about the presumed finding.  *See Lewis v. Dallas Soundstage, Inc.*, 167 S.W.3d 906, 915 (Tex. App.—Dallas 2005, no pet.); *Dallas Morning News Co. v. Bd. of Trs. of Dallas ISD*, 861 S.W.2d 532, 538 (Tex. App.—Dallas 1993, writ denied).

Super Ventures and Tariq requested additional findings on Chaudhry's failure to purchase the property and her failure to schedule the closing.  They did

17

not request additional or amended findings on Chaudhry's failure to maintain the property. Thus, we conclude Super Ventures and Tariq have failed to preserve their right to complain on appeal about this presumed finding. *See Gentry v. Squires Const., Inc.*, 188 S.W.3d 396, 410 (Tex. App.—Dallas 2006, no pet.) (citing *Lewis*, 167 S.W.3d at 915; *Dallas Morning News*, 861 S.W.2d at 538).

With respect to the court's implied findings related to Chaudhry's failure to schedule the closing and her failure to purchase the property, we conclude that the trial court could have impliedly found that these failures were excused by Super Ventures's breach and abandonment of the lease amendment. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."); *Bernal v. Garrison*, 818 S.W.2d 79, 86 (Tex. App.—Corpus Christi 1991, writ denied) ("In a bilateral contract, where promises have been exchanged for an exchange of performances and the contract is executory on both sides, one party's repudiation of a duty to perform, *or a breach of the contract of such materiality indicating an intention to repudiate the contract,* excuses or discharges the other party's remaining obligation to perform."); *Grp. Life & Health Ins. Co. v. Turner*, 620 S.W.2d 670, 673 (Tex. Civ. App.—Dallas 1981, no writ) ("[Repudiation] is conduct which shows a fixed intention to abandon, renounce, and refuse to perform the contract."). Super Ventures and Tariq do not challenge this implied finding on appeal.

18

## C. Tariq's Breach

Turning to the trial court's findings as to Tariq, individually, it was undisputed that the lease amendment was between Chaudhry and Super Ventures. It was also undisputed that Tariq signed the lease amendment in his capacity as a corporate officer. There is no evidence that Tariq, individually, entered into or breached any contract with Chaudhry. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995) ("As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts."). Therefore, the trial court erred by finding and concluding that Tariq, individually, abandoned and breached the contract. *See id.*; *cf. Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 70 (Tex. App.—Corpus Christi 2001, no pet.) ("An officer or director may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation.").

## D. Attorney's Fees

Super Ventures also challenges the trial court's finding of fact twenty-three regarding the amount of Chaudhry's legal fees, asserting that Chaudhry is not entitled to attorney's fees and court costs because Super Ventures did not breach or abandon the lease amendment. Super Ventures offers no additional argument or authority to support its contention, and it does not challenge the sufficiency of the evidence to support the reasonableness and necessity of these

fees. Because of our holding regarding the trial court's findings and conclusions regarding Super Ventures's abandonment and breach of the lease amendment, we conclude the trial court did not err by awarding attorney's fees and court costs to Chaudhry.

For these reasons, we conclude and hold that the evidence was legally and factually sufficient to support findings one, two, twelve,[6] fifteen, and twenty-three and that the trial court did not err by concluding in conclusion of law one that Super Ventures—but not Tariq, individually—abandoned and breached the lease amendment.[7] Accordingly, we sustain the first issue to the extent that the trial court found and concluded that Tariq, individually, abandoned and breached the lease amendment. We overrule the remainder of the first issue.

---

[6]Because it is unnecessary to the disposition of this issue, we do not address here the sufficiency of the evidence to support the portion of the trial court's finding twelve that neither Super Ventures nor Tariq had the ability to pay the balance due on the first lien on the property or convey the property free and clear of all liens in August 2009.

[7]Super Ventures and Tariq also point out that the lease amendment stated that the option fee was nonrefundable and that "[i]n the event that [Chaudhry] does not exercise [her] option, fails to purchase the Premises for any reason, fails to pay the entire Option Fee or defaults under the Lease, [Super Ventures] shall be entitled to retain all amounts paid by [Chaudhry] to [Super Ventures]." The trial court, however, ordered rescission of the lease agreement as a remedy for Super Ventures's abandonment of the lease amendment. Rescission works to avoid the contract, to return any consideration paid, and to return the parties to their earlier positions as if no contract had existed. *See, e.g., Ardinger*, 369 S.W.3d at 509. Super Ventures and Tariq do not complain that the trial court erred by concluding that Chaudhry was entitled to rescission based on her claims that Super Ventures abandoned the lease amendment. Thus, we conclude that Super Ventures and Tariq cannot rely on this provision to avoid Chaudhry's claim for return of the $180,000.

## V. Tariq's Personal Liability

In the remainder of what we construe as the third issue, Tariq asserts that the trial court erred by determining that he was liable to Chaudhry in his individual capacity. Tariq contends the evidence was insufficient to support findings of fact three, five, and twenty-two and conclusion of law nine, which were as follows:

> 3. Prior to August 29, 2009, Abu Tuarb Tariq had represented to Saiqa S. Chaudhry that there was a mortgage against the Property owed to Zion Bank.
>
>  . . . .
>
> 5. Super Ventures, Inc., during the period of January 1, 2008 to December 31, 2008, failed to pay franchise taxes of $1,798.08; on which the State of Texas filed a lien in the Deed Records of Hood County, Texas on August 17, 2008.
>
>  . . . .
>
> 22. Super Ventures, Inc.'s right to transact business in Texas was forfeited December 4, 2009; its registration was forfeited on April 9, 2010. The cause of the forfeiture occurred on November 15, 2008 when the tax payment was due and not made.
>
>  . . . .
>
> 9. Abu Tuarb Tariq, an officer of Super Ventures, Inc., is personally liable for the $180,000.00 claim of Saiqa S. Chaudhry pursuant to Section 171.252(1) (2) which holds the officer personally liable for debts created the day after the report or taxes was due or the tax was due.

Tariq argues the trial court erred by concluding that he was personally liable under tax code section 171.252 as an officer of Super Ventures. Under section 171.251, the comptroller is required to forfeit the corporate privileges of a

21

corporation on which the franchise tax is imposed if the corporation does not file a required report, does not pay the tax imposed or a penalty relating to that tax, or does not permit the comptroller to examine its corporate records. *See* Tex. Tax Code Ann. § 171.251 (West 2015). If the corporate privileges of a corporation are forfeited, each director or officer of the corporation is liable for a debt of the corporation as provided by tax code section 171.255. *Id.* § 171.252(2). Section 171.255(a) provides,

> If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

*Id.* § 171.255(a) (West 2015). Section 171.255(b) provides that "[t]he liability of a director or officer is the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership." *Id.* § 171.255(b) (West 2015); *see* Tex. Bus. Orgs. Code Ann. § 152.304 (West 2012) (stating that, in general, "all partners are jointly and severally liable for all obligations of the partnership unless otherwise provided . . . by law"); *U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc.*, 104 S.W.3d 284, 293 (Tex. App.— Beaumont 2003, pet. denied) (stating that partners are jointly and severally liable for debts of general partnership).

Section 171.255 is intended to hold those directors and officers liable who "have abused the corporate privilege by continuing to create and incur debts after the franchise tax is delinquent (ultimately leading to forfeiture of those privileges)

22

and are, therefore, 'culpable.'" *PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 883 (Tex. App.—Dallas 2007, no pet.); *see also In re Trammell*, 246 S.W.3d 815, 822 (Tex. App.—Dallas 2008, orig. proceeding) ("[I]t is the director's or officer's consent to and approval of the corporate debts that leads to their personal liability."). But because section 171.255 is penal in nature, it should be "strictly construed to protect those individuals against whom liability is sought." *Rossman v. Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 802 (Tex. App.—Dallas 2015, pet. denied) (quoting *PACCAR*, 239 S.W.3d at 882).

Tariq contends that the evidence was insufficient to establish that Super Ventures's corporate privileges were forfeited in December 2009 for failure to file a report or to pay a tax or penalty, and therefore, the trial court erred by concluding that Tariq was personally liable. An affidavit from a custodian of records for the Texas Comptroller of Public Accounts admitted into evidence states that the extended due date for Super Ventures's 2008 franchise tax report was November 17, 2008, that Super Ventures's right to transact business was forfeited on December 4, 2009, for failure to satisfy franchise tax requirements, and that Super Ventures's registration was forfeited on April 9, 2010. Another affidavit from a custodian of records for the Texas Comptroller of Public Accounts admitted into evidence states that the extended due date for the 2008 franchise tax report was November 15, 2008, and that Super Ventures's right to transact business was forfeited on December 4, 2009. There is no evidence that Super Ventures's franchise taxes were due on November 15, 2008 or November 17,

23

2008, or that Super Ventures's failure to pay its taxes by those dates was the cause of the forfeiture. Thus, the evidence is legally insufficient to support the trial court's finding that "[t]he cause of the forfeiture occurred on November 15, 2008[,] when the tax payment was due and not made."

However, if at least one of the elements of a ground of recovery or defense has been included in the findings, any omitted unrequested elements that are supported by the evidence are supplied by a presumption in support of the judgment. *See* Tex. R. Civ. P. 299. The affidavits of the custodian of records for the Texas Comptroller of Public Accounts admitted into evidence state that the extended due date for Super Ventures's 2008 franchise tax report was in mid-November 2008 and that Super Ventures's right to transact business was forfeited on December 4, 2009, for failure to satisfy franchise tax requirements. We conclude this was some evidence that Super Ventures's right to transact business was forfeited for failure to file a franchise tax report in November 2008.

Tariq next contends that even if he is personally liable for Super Ventures's debt to Chaudhry under section 171.255, he is not liable for the entire $180,000 option fee but is only liable for the amount of the option fee paid before August 18, 2011, which was the date Super Ventures's registration was reinstated. He contends that the "alleged final payment of the option fee of $30,456.87 was not agreed to by the parties to be paid toward the option fee until August 25, 2011— that is after . . . Super Ventures'[s] corporate protections were restored." Chaudhry contends that Tariq is liable for the entire $180,000 option fee because

24

it was paid during the time period between November 17, 2008, the date the report was due, and August 18, 2011, when its registration was reinstated.

Personal liability under section 171.255 hinges upon when the debt was created or incurred. *See* Tex. Tax Code Ann. § 171.255(a); *see Hovel v. Batzri*, No. 01-14-00305-CV, 2016 WL 802070, at *19 (Tex. App.—Houston [1st Dist.] Mar. 1, 2016, no pet. h.) (stating that "[t]he questions of what constitutes a 'debt' of the corporation and when the debt is 'created or incurred' are of paramount importance in construing section 171.255."). The relief Chaudhry sought to recover is based upon the lease amendment. Cases interpreting section 171.255(a) as it relates to a breach of contract claim have held that a debt is created or incurred when the contract in question was executed. *See, e.g.*, *Bon Amour Int'l, LLC v. Premier Place of Dallas, LLC*, No. 05-14-00816-CV, 2015 WL 4736784, at *3 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (mem. op.); *Rossman*, 455 S.W.3d at 802–04; *McCarroll v. My Sentinel, L.L.C.*, No. 14-08-01171-CV, 2009 WL 4667403, at *3 (Tex. App.—Houston [14th Dist.] Dec. 10, 2009, no pet.) (mem op.) (citing *Williams v. Adams*, 74 S.W.3d 437, 443 n.2 (Tex. App.—Corpus Christi 2002, pet. denied) (collecting cases)). Thus, in order for Tariq to be personally liable under section 171.255, Chaudhry was required to prove that the lease amendment was created or incurred after the date on which Super Ventures's report, tax, or penalty was due and before the corporate privileges were revived.

The lease amendment was signed in August 2009. Thus, the debt was created or incurred in August 2009. Because this debt was created or incurred after the date Super Ventures's report was due (November 2008) and before its corporate privileges were revived (August 2011), Tariq is personally liable for the debt under section 171.255(a) of the tax code. Thus, the trial court did not err in making conclusion of law nine and subsequently entering judgment against Super Ventures and Tariq, jointly and severally.

Accordingly, we overrule the remaining portion of the third issue.

## VI. Super Ventures and Tariq's Remaining Issues

In cases in which the judgment rests on multiple theories of recovery, an appellate court need not address all causes of action if any one theory is valid. *See, e.g., ACCI Forwarding, Inc. v. Gonzalez Warehouse P'ship*, 341 S.W.3d 58, 68 (Tex. App.—San Antonio 2011, no pet.); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 634 (Tex. App.—Waco 2000, pet. denied); *George Grubbs Enters., Inc. v. Bien*, 881 S.W.2d 843, 851 n.7 (Tex. App.—Fort Worth 1994), *rev'd on other grounds*, 900 S.W.2d 337 (Tex. 1995). Super Ventures and Tariq's remaining two issues concern their complaints with respect to Chaudhry's statute of frauds, fraudulent inducement, and DTPA theories of recovery, all of which sought rescission of the lease amendment and return of the option fee. Because the trial court's findings and conclusions on Super Ventures's capacity, Chaudhry's breach of contract and abandonment claims, and Tariq's personal

26

liability are sufficient to support the trial court's judgment, we need not address Super Ventures and Tariq's remaining issues.

## VII. Conclusion

For the reasons stated above, we affirm the trial court's judgment.


/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED:  June 23, 2016